UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

INTEGRATED MEDIA RESOURCES, LLC,
Individually and Derivatively on Behalf of
Nominal Defendant G2 FMV, LLC and also
Double Derivatively on Behalf of Nominal
Defendant G2 INVESTMENT GROUP, LLC.

            Plaintiffs,

v.

JONATHAN TODD MORLEY, DORI V.
KARJIAN, DAVID SAMS, JONATHAN
LERMAN, ANTONIO DE LA RUA, MARIA
BOYAZNY,

            Defendants,

and

G2 FMV, LLC, and G2 INVESTMENT GROUP,
LLC,

            Nominal Defendants.

------------------------------------------------------- X

Case No. 1:21-cv-04993-DLC

**MEMORANDUM OF LAW IN SUPPORT OF NOMINAL DEFENDANTS G2 FMV, LLC
AND G2 INVESTMENT GROUP, LLC AND DEFENDANT JONATHAN TODD
MORLEY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

SCHULTE ROTH & ZABEL LLP

Howard Schiffman
George H. Rowe
919 Third Avenue
New York, New York  10022
(212) 756-2000
howard.schiffman@srz.com
george.rowe@srz.com

*Attorneys for G2 FMV, LLC, G2 Investment
Group, LLC, and Jonathan Todd Morley*

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS.............................................................................3

ARGUMENT...............................................................................................4

I.      PLAINTIFF FAILS TO STATE DIRECT CLAIMS........................................5

      A.     Plaintiff Fails to State a Claim for Fraudulent Misrepresentation..........5

            1.     The Fraudulent Misrepresentation Claim Is Time-Barred by the Statute of Limitations .................................................................5

            2.     The Fraudulent Misrepresentation Claim Does Not Meet the Heightened Pleading Standard of Rule 9(b) And Fails to State a Claim.....5

      B.     Plaintiff Fails to State a Claim for Civil Conspiracy .............................9

            1.     The Civil Conspiracy Claim Is Barred by Statute of Limitations..............9

            2.     The Civil Conspiracy Allegations Are Conclusory and Fail to Adequately Allege the Requisite Underlying Wrongful Act......................9

II.     A PRE-LAWSUIT DEMAND WAS REQUIRED BECAUSE PLAINTIFF ASSERTS DERIVATIVE CLAIMS.............................................................15

III.    THE COMPLAINT FAILS TO ADEQUATELY ALLEGE THAT DEMAND WAS FUTILE.....................................................................................................19

      A.     Plaintiff Fails to Allege Any Particularized Facts Showing That a Majority of the Managers Were Interested by Virtue of Alleged Liability ...........................20

            1.     Plaintiff Does Not Allege Particularized Facts Demonstrating a Substantial Likelihood of Any Manager's Liability for Time-Barred Securities Fraud Claims...........................................................................20

            2.     Plaintiff Does Not Allege Particularized Facts Demonstrating a Substantial Likelihood That a Majority of the Managers Have Liability on the Remaining Derivative Claims .......................................22

      B.     Plaintiff Fails to Allege Any Particularized Facts Showing That a Majority of the Managers Otherwise Lack Independence......................................22

      C.     Plaintiff Fails to Allege Any Particularized Facts Showing That Any Transaction Was Otherwise Not the Product of a Valid Exercise of Business Judgment ........................................................................................23

IV.    PLAINTIFF IS NOT ENTITLED TO DECLARATORY OR INJUNCTIVE RELIEF, A CONSTRUCTIVE TRUST, OR AN ACCOUNTING...............................24

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Alex. Brown Mgt. Servs., Inc.*,
No. CIV.A. 762-N, 2005 WL 2130607 (Del. Ch. Aug. 26, 2005).........................................10

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d
244 ...................................................................................................................................*passim*

*Atlantis Plastics Corp. v. Sammons*,
558 A.2d 1062 (Del. Ch. 1989)...........................................................................................9

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ............................................................................................ 14, 17

*In re Caremark Int'l. Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996)..................................................................................... 12, 13

*Certainteed Corp. v. Celotex Corp.*,
No. CIV. A. 471, 2005 WL 217032 (Del. Ch. Jan. 24, 2005) .................................................5

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009)..................................................................................... 12, 14

*Clifford Paper, Inc. v. WPP Inv'rs, LLC*,
C.A. No. 2020-0448-JRS, 2021 WL 2211694 (Del. Ch. June 1, 2021)................................16

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007)............................................................................................20

*Dohmen v. Goodman*,
234 A.3d 1161 (Del. 2020) ...............................................................................................12

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
411 F.3d 384 (2d Cir. 2005) ..............................................................................................24

*Ellis v. Gonzalez*,
CV 2017-0342-SG, 2018 WL 3360816 (Del. Ch. July 10, 2018), *aff'd sub
nom. Ellis on Behalf of AbbVie Inc. v. Gonzalez*, 205 A.3d 821 (Del. 2019).........................22

*F5 Cap. v. Pappas*,
856 F.3d 61 (2d Cir. 2017) ...............................................................................................16

*Ferre v. McGrath*,
No. 06 Civ. 1684-CM, 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007)...................................13

iv

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
52 F. Supp. 3d 625 (S.D.N.Y. 2014) ....................................................................6

*Forsythe v. ESC Fund Mgmt. Co. (U.S.)*,
CA. No. 1091-VCL, 2007 WL 2982247 (Del. Ch. Oct. 9, 2007)...........................13

*Frank v. Elgamal*,
2014 WL 957550 (Del. Ch. Mar. 10, 2014) ........................................................14

*In re GoPro, Inc.*,
C.A. No. 2018-0784-JRS, 2020 WL 2036602 (Del. Ch. Apr. 28, 2020) ..........17, 19

*Gould v. Moynihan*,
275 F. Supp. 3d 487 (S.D.N.Y. 2017) .................................................................16

*Grobow v. Perot*,
526 A.2d 914 (Del. Ch. 1987), *aff'd*, 539 A.2d 180 (Del. 1988), *abrogated on other grounds by Brehm*, 746 A.2d 244 .............................................................15

*Highland Legacy Ltd. v. Singer*,
No. Civ.A. 1566–N, 2006 WL 741939 (Del. Ch. Mar. 17, 2006) .........................23

*In re IAC/Interactivecorp Secs. Litig.*,
478 F. Supp. 2d 574 (S.D.N.Y. 2007) .................................................................22

*In re INFOUSA, Inc. S'holders Litig.*,
953 A.2d 963 (Del. Ch. 2007)........................................................................17, 18

*Jackson Nat'l. Life Ins. Co. v. Kennedy*,
741 A.2d 377 (Del. Ch. 1999).............................................................................14

*Krim v. ProNet, Inc.*,
744 A.2d 523 (Del. Ch. 1999)..............................................................................11

*KT4 Partners LLC v. Palantir Techs. Inc.*,
C.A. No. N17C-12-212 EMD ..............................................................................10

*Kuhns v. Ledger*,
202 F. Supp. 3d 433 (S.D.N.Y. 2016) .................................................................24

*Kuroda v. SPJS Holdings, L.L.C.*,
971 A.2d 872 (Del. Ch. 2009)..............................................................................10

*Lekki Cap. Corp. v. Automatic Data Processing, Inc.*,
No. 01 CIV.7421(LMM), 2002 WL 987147 (S.D.N.Y. May 14, 2002)...............25

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) ................................................................................6

*Levine v. Smith*,
    591 A.2d 194 (Del. 1991) .................................................................................. 15, 19

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
    833 A.2d 961 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004) .................................. 17, 23

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
    845 A.2d 1040 (Del. 2004) ............................................................. 15, 16, 19, 23

*In re MetLife Inc. Deriv. Litig.*,
    2020 WL 4746635 ....................................................................................... 14, 22

*Mooney v. Boeing Co.*,
    C.A. No. K20C-04-025 WLW, 2021 WL 1852310 (Del. Super. May 4, 2021) .................. 6, 9

*Outdoor Techs., Inc. v. Allfirst Fin., Inc.*,
    No. 99C-09-151-JRS, 2001 WL 541472 (Del. Super. Ct. Apr. 12, 2001) .............................. 8

*Pope Invs. II, LLC v. Deheng Law Firm*,
    586 F. App'x 1 (2d Cir. 2014) ...................................................................... 11, 21

*Postorivo v. AG Paintball Holdings, Inc.*,
    Civ. No. 2991-VCP, 2008 WL 553205 (Del. Ch. Feb. 29, 2008) ................................... 20, 22

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ................................................................ 17, 18, 19, 22

*Rattner v. Bidzos*,
    No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ......................................... 18

*Ryan v. Gursahaney*,
    C.A. No. 9992–VCP, 2015 WL 1915911 (Del. Ch. Apr. 28, 2015), *aff'd*, 128
    A.3d 991 (Del. 2015) ........................................................................................ 23

*Seagrape Inv'rs LLC v. Tuzman*,
    No. 19-CV-9736 (RA), 2020 WL 5751232 (S.D.N.Y. Sept. 25, 2020) ............................... 21

*Seiden v. Kaneko*,
    C.A. No. 9861-VCN, 2015 WL 7289338 (Del. Ch. Nov. 3, 2015) ..................................... 25

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995) ........................................................................... 18

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012) ................................................................... 21

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) .............................................................................. 12, 13

*The Raj & Sonal Abhyanker Fam. Tr. v. Blake*,
  CV 2020-0521-KSJM, 2021 WL 2477025 (Del. Ch. June 17, 2021)...................................11

*Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*,
  C.A. No.7866-VCP, 2014 WL 897223 (Del. Ch. Mar. 5, 2014)...........................................10

*Wood v. Baum*,
  953 A.2d 136 (Del. 2008)............................................................................................ 13, 19

**Statutes**

15 U.S.C. § 78u-4(b)......................................................................................................21

28 U.S.C. § 1367(c)(3)...................................................................................................11

Del. Code tit. 6, § 18-1003 ............................................................................................17

Delaware Limited Liability Company Act Section 18-1003......................................................17

Securities Exchange Act of 1934 Section 10(b) ............................................. 2, 11, 20, 21

**Rules**

Del. Ch. Ct. R. 23.1.3......................................................................................................17

Fed. R. Civ. P. 9(b) .........................................................................................................6

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 4

Fed. R. Civ. P. 23.1 ...................................................................................................1, 5, 16

SEC Rule 10b-5 ..............................................................................................................2

Nominal Defendants G2 FMV, LLC ("G2 FMV") and G2 Investment Group, LLC ("G2 IG") and Defendant Jonathan Todd Morley ("Morley") respectfully submit this Memorandum of Law in support of their motion to dismiss the Verified Complaint (the "Complaint") filed by plaintiff Integrated Media Resources, LLC ("Plaintiff" or "Integrated") pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1.

## PRELIMINARY STATEMENT

Plaintiff's claim is brought by a highly sophisticated investor who purchased speculative securities, G2 FMV, over seven years ago (in July 2014) and now attempts to blame its investment losses on the other investors who made their own investment decisions and actually lost significantly more money than Plaintiff.  The Complaint asserts two types of claims:  (a) direct claims relating to the 2014 purchase that are clearly barred by statute of limitations and lack the particularized specificity regardless, and (b) purported derivative claims that were made without the pre-suit demand required under Delaware law and are meritless in any case. Plaintiff's attempt to suggest that such demand was excused as futile is unjustified and lacks the required showing of particularized factual allegations as to why managers of the limited liability companies were incapable of appropriately executing their duties in responding to a demand.  In fact, those individual members of the Management Committee of G2 FMV and Executive Committee of G2 IG suffered much greater investment losses than Plaintiff, and, as a result, are highly motivated to cause the entities to assert any claims that may be appropriate.  Meanwhile, the Complaint's tactic of naming managers as defendants is insufficient to excuse the demand requirement because G2 FMV's and G2 IG's operative agreements contain exculpation clauses that prevent any substantial likelihood of liability for the managers, particularly given that the

1

Complaint alleges no facts that would constitute grossly negligent conduct, as required to overcome the protections afforded by the clauses.

The Complaint's only asserted basis for federal jurisdiction is the count asserted under Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 thereunder, which Plaintiff only asserts as part of the derivative claims, not as a direct claim. Such 10(b) claim is plainly time-barred and its dismissal would result in the lack of subject matter jurisdiction. Instead, recognizing the obvious fatal flaw in asserting a 10(b) claim, Plaintiff resorts to asserting a fraudulent misrepresentation claim against Morley. However, that claim is similarly time-barred. Moreover, Plaintiff fails to allege any statements by Morley that were false or any facts indicating Morley made any statements with the requisite state of mind. Plaintiff also brings a civil conspiracy claim against all the individual defendants, but not only is this claim also time-barred, Plaintiff engages in impermissible group pleading and fails to show any underlying wrongful act, as required.

Unable to adequately allege any direct claims, Plaintiff then attempts to bring a number of derivative and double derivative claims, without first making a demand. The derivative claims fail because controlling Delaware law presumes that the managers are independent and faithful to their fiduciary duties and will properly consider a demand. To overcome this presumption, Plaintiff must allege particularized facts, on a manager-by-manager and claim-by-claim basis, demonstrating that a majority of the managers would be unable to properly consider a demand. Plaintiff has wholly failed to do so. Indeed, the Complaint alleges virtually no particularized conduct by two of the three managers. Accordingly, all claims, both direct and derivative, should be dismissed with prejudice.

2

## STATEMENT OF FACTS[1]

G2 IG, a Delaware limited liability company, was established in 2008 by Morley and others as "an independent, privately-owned financial services firm that is engaged in investment management, advisory, private capital raising and other capital markets activities." (Compl., Ex. 1 at 2.) The G2 IG management team had "a long and successful track record identifying and partnering with top investment managers." (*Id.*, Ex. 11 at 6.) G2 IG's managers are the members of its Executive Committee – Morley, David Sams ("Sams"), and Antonio de la Rua ("de la Rua"). (*Id.* ¶ 38.)

G2 FMV, also a Delaware limited liability company, was established in 2009 as a special purpose vehicle to hold and manage interests in G2 IG. (*Id.* ¶ 40.) G2 FMV's managers are the members of its Management Committee, also Morley, Sams, and de la Rua. (*Id.* ¶ 41.)

Barrett Wissman ("Wissman"), a sophisticated businessman with "decades of experience in the media and entertainment industry," was introduced to Morley in January of 2014. (*Id.* ¶ 44.) After they discussed a "G2 Media" platform strategy, Wissman wrote to Morley on February 2, 2014 that he was "excited to go to the next step." (*Id.* ¶¶ 46–47, Ex. 8.)

On March 31, 2014, Wissman wrote to Morley reiterating his excitement to get involved with G2 and stated he was "also willing to make an investment in the partners' LLC of G2" (meaning G2 FMV) through one of his entities and that he may want to bring in a couple investors to invest in G2 FMV alongside him. (*Id.* ¶ 57, Ex. 10.)

A new entity was formed, G2 Media and Entertainment, to which Wissman agreed to transfer projects in the media and entertainment business and Morley agreed to invest seed capital, both in exchange for ownership interests in the venture. (*Id.* ¶¶ 50–51.)

---

[1] Facts alleged in the Complaint are presumed to be true solely for purposes of this motion to dismiss, unless otherwise noted.

On July 7, 2014, Plaintiff invested $1.5 million in G2 FMV by purchasing 22,864 G2 FMV Class A Common Units.  (*Id.* ¶ 114.)  Under the terms of G2 FMV's operating agreement, which Plaintiff signed and agreed to, members did not have any unilateral right to withdraw their contribution or receive a distribution unless authorized by the Management Committee.  (*Id.* ¶ 42, Ex. 14.)

On May 9, 2019, Plaintiff emailed Dori Karjian ("Karjian"), G2 IG's former general counsel, threatening legal action and demanding that Morley "buy us out at our original investment amount ($1.5M)" within 30 days.  (*Id.* ¶ 163, Ex. 29.)

The charters of both G2 IG and G2 FMV have been cancelled by the Delaware Secretary of State since June 1, 2020, more than a year before Plaintiff commenced this lawsuit.  (*Id.* ¶ 166.)

Despite the threat of legal action in May 2019, Plaintiff let another two years pass before filing the instant action on June 5, 2021, asserting, *inter alia*, derivative and double derivative claims on behalf of G2 FMV and G2 IG without first making any pre-suit demand on the managers of either entity.  (*Id.* ¶ 184.)

Plaintiff's ownership interest in G2 FMV is an order of magnitude smaller than the ownership interests of any of the managers or entities they allegedly control; thus, in reality, the managers lost far more than Plaintiff on G2 IG's investments.  (*Id.* ¶¶ 132, 137, 139, Ex. 38.)

## ARGUMENT

The Complaint is fatally flawed and should be dismissed.  First, Plaintiff's direct claims for fraudulent misrepresentation against Morley and for civil conspiracy against all defendants are time-barred and fail to state a claim (Fed. R. Civ. P. 12(b)(6)).  Second, knowing it cannot state any meritorious direct claims, Plaintiff resorts to bringing derivative claims as a subterfuge,

despite not seriously alleging any facts showing mismanagement.  The derivative claims too are without merit, and Plaintiff falls far short of making the atypically rigorous showing required to adequately allege that demand would be futile (Fed. R. Civ. P. 23.1(b)(3)).

## I.    PLAINTIFF FAILS TO STATE DIRECT CLAIMS

### A.    Plaintiff Fails to State a Claim for Fraudulent Misrepresentation

Plaintiff's fraudulent misrepresentation claim, which is only asserted against Morley and Karjian, is time-barred and fails to satisfy the heightened pleading standard applicable to fraud-based claims.  Further, Plaintiff fails to adequately allege that any of the statements which purportedly induced Plaintiff to invest in G2 FMV were actually false or made with the necessary state of mind.

#### 1.    The Fraudulent Misrepresentation Claim Is Time-Barred by the Statute of Limitations

Plaintiff's fraudulent misrepresentation claim is barred by a three-year statute of limitations.  *See Certainteed Corp. v. Celotex Corp.*, No. CIV. A. 471, 2005 WL 217032, at *8 (Del. Ch. Jan. 24, 2005) ("[M]isrepresentations are also subject to a three-year statute of limitations.").  The applicable statute of limitations runs from "the time of the injury," here, the date of Plaintiff's investment in G2 IG.  *Id.* at *7–8 (holding claim alleging misrepresentations induced a party to enter into transaction accrued on the date the transaction closed).  Since Plaintiff's claim is that alleged misrepresentations induced it to invest in G2 FMV on July 7, 2014 (Compl. ¶ 114), the cause of action accrued on that date, almost seven years before filing of the Complaint.  Therefore, Plaintiff's fraudulent misrepresentation claim is time-barred and should be dismissed on that basis alone.

#### 2.    The Fraudulent Misrepresentation Claim Does Not Meet the Heightened Pleading Standard of Rule 9(b) And Fails to State a Claim

Alternatively, the Complaint fails to satisfy the heightened pleading standards applicable to fraud-based claims in order to state a claim.  Pursuant to Rule 9(b), Plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), the Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 637 (S.D.N.Y. 2014) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *Id.* (citation omitted).  Additionally, Plaintiff "must allege facts that give rise to a *strong inference* of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted) (emphasis added).

Under Delaware law, a claim for fraudulent misrepresentation requires Plaintiff to adequately allege:  "(1) a false representation, usually one of fact, made by defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff as a result of such reliance." *Mooney v. Boeing Co.*, C.A. No. K20C-04-025 WLW, 2021 WL 1852310, at *3 (Del. Super. May 4, 2021).

Plaintiff alleges four categories of misrepresentations regarding:  (1) "the use of the funds Plaintiff would invest in G2 FMV, including that the funds would all be used for purposes of advancing the Plaintiff's investment," (2) "G2 IG's assets, including statements related to MB Global, Grafton Asset Management/Grafton Energy Capital and Rising," (3) "that they would

receive economic benefit from the MB Global and Grafton partnership-related businesses," and (4) "the G2 Companies' cash flow problems."  (Compl. ¶ 246.)

As to the first alleged misrepresentation, the Complaint does not allege any specific statement made by Morley as to the "use of the funds Plaintiff would invest in G2 FMV" or that "the funds would all be used for purposes of advancing the Plaintiff's investment."  As such, it fails to satisfy Rule 9(b)'s requirement that Plaintiff identify a statement contended to be false, the speaker, or when such a statement was supposedly made.  The Complaint also contains no allegations from which it could be reasonably inferred that any statement was false or made with knowledge or belief of its falsity or reckless indifference for the truth.  In fact, there are no well-pled allegations that any investor funds were mismanaged or used for any purpose other than advancing G2 FMV's investments.

As to the second alleged category of misrepresentations, concerning "G2 IG's assets," Plaintiff alleges that, on January 10, 2014, Wissman received by email a "G2 Investment Group Projections Model Assumptions & Summary Output" document (*Id.* ¶¶ 45, 86, Ex. 6), and that, on May 10, 2014, Wissman received a presentation "featuring a joint venture between G2 IG and Grafton Asset Management called Grafton Energy Capital" (*Id.* ¶ 96, Ex. 22) and a presentation "featuring a joint venture between G2 IG and Rising Realty Partners called Rising Realty Merchant Bank" (*Id.* ¶ 101, Ex. 21).  Plaintiff alleges that these documents contained false statements, but there is no allegation that Morley provided these documents to Wissman or even had any involvement in their creation.  Thus, it is not adequately alleged that Morley made any statements in connection with, or could be liable for statements in, the documents.  Nor are there any facts alleged showing Morley knew or believed any statements therein to be false or was recklessly indifferent as to their truth.

7

As to the third alleged category of misrepresentations, that Plaintiff "would receive economic benefit from the MB Global and Grafton partnership-related businesses," there is no such statement alleged to have been made by Morley.  The Complaint alleges that "Wissman was led to believe G2 IG would receive revenue from its ownership stake in MB Global" (*Id.* ¶ 92), but does not allege any statements by Morley that supposedly led Wissman to believe this. Similarly, the Complaint alleges that, "[b]ased on the representations made by Defendants, Plaintiff was led to believe that . . . Defendants would raise $200 million . . . towards Grafton Energy Capital" (*Id.* ¶ 97), but does not allege any statements by Morley that supposedly led Plaintiff to believe this or any facts showing that Morley had the requisite knowledge or belief of their falsity or was recklessly indifferent to their truth.

Moreover, "statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud." *Outdoor Techs., Inc. v. Allfirst Fin., Inc.*, No. 99C-09-151-JRS, 2001 WL 541472, at *4 (Del. Super. Ct. Apr. 12, 2001).  Thus, any predictions of future revenues G2 IG might receive are not actionable.

Regarding the alleged misrepresentations "as to the G2 Companies' cash flow problems," the Complaint alleges just a single statement by Morley in a May 15, 2014 email responding to a question from Wissman asking "Is there some major cash flow problem?"  (Compl. ¶¶ 61–62, Ex. 15.)  Morley allegedly replied, "No, we just crushed it here and I want this done." (*Id.* ¶ 62, Ex. 15.)  The Complaint contains no well-pled factual allegations from which it could reasonably be inferred that this statement was false.  Instead Plaintiff simply makes the conclusory allegation that "G2 IG was in fact in desperate need for a cash infusion." (*Id.* ¶ 62.)  To the extent Plaintiff contends that alleged tax liability demonstrates "cash flow issues" (*Id.* ¶¶ 80, 83), this would be meritless as the Complaint does not allege what the cash flow needs of G2 IG were

so as to show whether the alleged resolution with the IRS created "a major cash flow problem," as Plaintiff merely speculates and alleges in conclusory terms.  Nor does Plaintiff allege any facts from which it could be inferred that Morley knew or believed that this statement was false or made it with reckless disregard for its truth.  *See Mooney*, 2021 WL 1852310, at *3.

### B.   Plaintiff Fails to State a Claim for Civil Conspiracy

Plaintiff's civil conspiracy count (Count Ten) fails to state a claim because it is time-barred, does nothing more than recite the cause of action's elements in a conclusory manner, and fails to adequately allege the necessary underlying wrongful act.

### 1.   The Civil Conspiracy Claim Is Barred by Statute of Limitations

Plaintiff's direct civil conspiracy claim is time-barred because it is subject to a three-year statute of limitations.  *See Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1064 (Del. Ch. 1989) (applying three-year statute of limitations to civil conspiracy claim).  A civil conspiracy claim runs from the alleged wrongful act or acts causing damages.  *Id.* at 1066 (holding that, for civil conspiracy claim, "[f]acts, not legal conclusions, must be pled, including facts showing damages").  Here, Plaintiff's only damages are from its investment in G2 FMV on July 7, 2014 (Compl. ¶ 174 (alleging "losses or damages" from investment in G2 FMV), which represents Plaintiff's only alleged loss.)  Furthermore, Plaintiff admits it did not have any unilateral right to withdraw its contribution in G2 FMV (*Id.* ¶ 42, Ex. 14).  Accordingly, the civil conspiracy claim is time-barred.  *See, e.g.*, *Atlantis Plastics Corp.*, 558 A.2d at 1064 (holding that limitations period to bring civil conspiracy claim started running when stockholder received stock in corporation).

### 2.   The Civil Conspiracy Allegations Are Conclusory and Fail to Adequately Allege the Requisite Underlying Wrongful Act

The elements for civil conspiracy under Delaware law are: "(i) a confederation or combination of two or more persons; (ii) an unlawful act done in furtherance of the conspiracy; and (iii) damages resulting from the action of the conspiracy parties." *Albert v. Alex. Brown Mgt. Servs., Inc.*, No. CIV.A. 762-N, 2005 WL 2130607, at *10 (Del. Ch. Aug. 26, 2005) (citations omitted). In pleading the first element, a plaintiff "may not rely solely on the fact that more than one person is involved in committing an alleged wrong." *Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, C.A. No.7866-VCP, 2014 WL 897223, at *24 (Del. Ch. Mar. 5, 2014), *judgment entered*, No. 7866-VCP, 2014 WL 2967749 (Del. Ch., July 01, 2014). A civil conspiracy claim also fails if the plaintiff does not demonstrate "an underlying wrongful act, such as a tort or a statutory violation." *KT4 Partners LLC v. Palantir Techs. Inc.*, C.A. No. N17C-12-212 EMD CCLD, 2021 WL 2823567, at *31 (Del. Super. Ct. June 24, 2021) (quoting *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009)). Thus, if Plaintiff "fails to adequately allege the elements of the underlying claim, the conspiracy claim must be dismissed." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009).

Plaintiff alleges, without any factual support, that the defendants "conspired and agreed among themselves to defraud Plaintiff, to breach or aid and abet in the breach of the fiduciary duties of Defendants Morley, de la Rua, and Karjian and to commit other torts." (Compl. ¶ 252.) The Complaint lacks any factual allegations as to when this agreement was supposedly reached, and only alleges its existence in a conclusory fashion.[2] The Complaint also fails to adequately allege the requisite "underlying wrongful act" because it fails to state a claim as to either the

---

[2] Moreover, civil conspiracy is a claim for vicarious liability which "holds a third party, not a fiduciary, responsible for a violation of fiduciary duty"; it does not apply to "defendants which owe [] unitholders a direct fiduciary duty." *Albert*, 2005 WL 2130607, at *10. Thus, to the extent Plaintiff's claim is based on its underlying breach of fiduciary duty claims, Plaintiff fails to state a claim.

direct fraudulent misrepresentation claim or the Section 10(b) and Rule 10b-5, breach of fiduciary duties, waste, and unjust enrichment claims brought derivatively.

Plaintiff's derivative Section 10(b) and Rule 10b-5 claim is time-barred and otherwise fails to state a claim.  Critically, because the only basis for subject matter jurisdiction is the Section 10(b) and Rule 10b-5 claim (*Id.* ¶ 9), assuming the Court dismisses that claim, the Court should also dismiss the remaining state law claims.  *See Pope Invs. II, LLC v. Deheng Law Firm*, 586 F. App'x 1, 4 (2d Cir. 2014) (holding district court properly declined to exercise supplemental jurisdiction over state law claims after dismissing Section 10(b) and Rule 10b-5 claim); 28 U.S.C. § 1367(c)(3).

The breach of fiduciary duties claim challenges actions that are presumptively proper under the business judgment rule, which Plaintiff has not come close to rebutting.  *See Krim v. ProNet, Inc.*, 744 A.2d 523, 527 (Del. Ch. 1999) (explaining the business judgment rule "protects the actions of directors, affording them the presumption directors act on an informed basis and in the honest belief they acted in the best interest of the corporation.").  Further, Plaintiff must adequately plead a breach of fiduciary duty claim "against each individual director [or officer]; so-called 'group pleading' will not suffice."  *The Raj & Sonal Abhyanker Fam. Tr. v. Blake*, CV 2020-0521-KSJM, 2021 WL 2477025, at *4 (Del. Ch. June 17, 2021).

The Complaint alleges that the individual defendants breached their fiduciary duties by "approving, assisting, carrying out, facilitating, encouraging, and/or failing to prevent the Transactions," "failing to disclose and instead concealing material facts about the Transactions," "directing and overseeing the mismanagement of G2 FMV and G2 IG," and/or "putting themselves in a position that was antagonistic to G2 FMV and G2 IG." (Compl. ¶ 202.)  Those allegations are woefully insufficient to state a claim upon which relief may be granted.

First, the Complaint fails to allege any non-conclusory facts indicating that any of the transactions were not subject to the business judgment rule or even approved by any of the managers.

Second, Plaintiff fails to adequately allege that the managers omitted material facts about the transactions.  To plead a disclosure claim, Plaintiff must allege particularized facts suggesting "sufficient board involvement in the preparation of the disclosures" such that they are "directly responsible for the misstatements or omissions."  *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009).  Plaintiff's disclosure claims are based on various presentations and financial statements, yet Plaintiff does not allege any particularized facts suggesting that any of the managers prepared the presentations or financial statements or even that they reviewed or approved them.[3]

To the extent Plaintiff's breach of fiduciary duty claims are based on the assertion that the managers "fail[ed] to prevent the Transactions" or were responsible for "overseeing the mismanagement of G2 FMV and G2 IG" (Compl. ¶ 202), these are called *Caremark* claims.  *See Stone v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (describing a *Caremark* claim as "a claim that directors are subject to personal liability for employee failures").  Courts have recognized that *Caremark* claims are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *Id.* (quoting *In re Caremark Int'l. Inc. Derivative Litig.*,

---

[3] Additionally, there is no fiduciary duty for directors or managers to affirmatively disclose facts outside of the context of seeking shareholder or member action.  As the Delaware Supreme Court explained in *Dohmen v. Goodman*, 234 A.3d 1161, 1168–69 (Del. 2020), a director's disclosure obligations apply in the context of "a communication associated with a request for stockholder action" and "the fiduciary duty of disclosure does not apply" in the context of "a communication not associated with a request for stockholder action, such as when directors make periodic financial disclosures."  Because the Complaint does not allege any instance in which the managers sought any action by Plaintiff or any other members, Plaintiff's claim falls within the latter context.  Although "directors must still deal honestly with stockholders," "to state a claim for breach of fiduciary duty in this context, the directors must have *knowingly* disclosed false information."  *Id.* (emphasis added).  Here too, Plaintiff has not adequately alleged particularized facts suggesting any of the managers had knowledge that any of the presentations or financial statements contained false statements.

698 A.2d 959, 967 (Del. Ch. 1996)); *Ferre v. McGrath*, No. 06 Civ. 1684-CM, 2007 WL 1180650, at *8 (S.D.N.Y. Feb. 16, 2007).

To plead a *Caremark* claim, Plaintiff must allege that "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370. Plaintiff has not made either showing.

First, the Complaint contains no allegations one way or the other regarding G2 FMV or G2 IG's "reporting or information system or controls." Second, to state a claim under the second *Caremark* prong for failure to monitor, Plaintiff must plead particularized facts indicating that "the board ignored red flags indicating misconduct in defiance of their duties." *Ferre*, 2007 WL 1180650, at *8; *see also Stone*, 911 A.2d at 373. Plaintiff does not allege any particularized facts indicating that any of the managers were even aware of the transactions, much less that they were presented with and consciously ignored "red flags" indicating misconduct. Under Delaware law, "red flags are 'only useful when they are either waved in one's face or displayed so that they are visible to the careful observer.'" *Wood v. Baum*, 953 A.2d 136, 143 (Del. 2008) (internal quotation omitted); *see also Forsythe v. ESC Fund Mgmt. Co. (U.S.)*, CA. No. 1091-VCL, 2007 WL 2982247, at *7 (Del. Ch. Oct. 9, 2007) ("[D]irectors will be potentially liable for breach of their oversight duty only if they ignore 'red flags' that actually come to their attention.").

Moreover, Plaintiff alleges nothing regarding the managers' failure to act on the alleged red flags, but instead relies solely on conclusory assumptions of inaction. In the absence of any

factual allegations showing the managers ignored "red flags," Plaintiff has not met its burden of demonstrating the managers knowingly failed to discharge their fiduciary obligations.

Because Plaintiff cannot show a primary breach of fiduciary duty, it cannot show any defendant's liability for aiding and abetting either. *See Jackson Nat'l. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 386 (Del. Ch. 1999) (noting that a breach of duty by a fiduciary is an element of an aiding and abetting claim). Further, a claim for aiding and abetting requires that "a defendant, who is not a fiduciary, knowingly participated in a breach." *Id.* As each of the managers are allegedly fiduciaries, they cannot themselves be liable for aiding and abetting such a breach.

Plaintiff's other claims for waste and unjust enrichment are "premised" on the underlying fiduciary duty claims (Compl. ¶ 210–11, 218), and as such "evaluat[ing] a demand to bring these" claims depends on "evaluat[ing] the validity of the underlying [fiduciary duty] claims." *In re MetLife Inc. Deriv. Litig.*, Consol. C.A. No. 2019-0452-SG, 2020 WL 4746635, at *18 (Del. Ch. Aug. 17, 2020); *Citigroup*, 964 A.2d at 114 n.6 ("Delaware law does not recognize an independent cause of action against corporate directors and officers for reckless and gross mismanagement; such claims are treated as claims for breach of fiduciary duty."); *Frank v. Elgamal*, 2014 WL 957550, at *31 (Del. Ch. Mar. 10, 2014) (explaining courts "frequently trea[t] duplicative fiduciary duty and unjust enrichment claims in the same manner when resolving a motion to dismiss"). As Plaintiff fails to adequately allege a valid breach of fiduciary duty claim, its waste and unjust enrichment claims also fail.

In addition, for its waste claim, Plaintiff must meet the "stringent requirements" of showing "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade," such that the transfer "is in effect a gift." *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (citation omitted).

Plaintiff has not made any such allegations here beyond simply restating the standard in conclusory terms.  (Compl. ¶ 212.)

## II.   A PRE-LAWSUIT DEMAND WAS REQUIRED BECAUSE PLAINTIFF ASSERTS DERIVATIVE CLAIMS

Faced with the inability to properly assert any direct claims, Plaintiff attempts to fall back on meritless derivative claims to accomplish indirectly what it cannot achieve directly.  This too fails because Plaintiff cannot show that demand on the managers should be excused.  Delaware law is well-settled that directors (or managers) are *presumptively* independent and faithful to their fiduciary duties.  *See Levine v. Smith*, 591 A.2d 194, 205–06 (Del. 1991); *Grobow v. Perot*, 526 A.2d 914, 924 (Del. Ch. 1987), *aff'd*, 539 A.2d 180 (Del. 1988), *abrogated on other grounds by Brehm*, 746 A.2d 244.  "In the context of presuit demand, the burden is upon the plaintiff in a derivative action to overcome that presumption."  *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048–49 (Del. 2004).  The managers of G2 FMV and G2 IG are Morley, Sams, and de la Rua, yet the Complaint is practically devoid of any particularized allegations as to any conduct by Sams and de la Rua.  This is fatal to Plaintiff's ability to overcome the presumption.

Plaintiff also ignores that both G2 IG and G2 FMV's operative limited liability company agreements contain exculpation clauses providing that no managers shall be liable to the companies or any member for any actions taken or failure to act "unless such act or failure to act was grossly negligent, fraudulent or performed or omitted willfully or intentionally and in bad faith."  (Compl., Ex. 3 § 3.5, Ex. 5 § 4.8.)  Thus, Plaintiff must allege particularized facts showing that a majority of the managers were at least grossly negligent, which it has not done.

In a derivative action, Rule 23.1 of the Federal Rules of Civil Procedure requires that Plaintiff "state with particularity: (A) any effort by the plaintiff to obtain the desired action from

the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." *F5 Cap. v. Pappas*, 856 F.3d 61, 82 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23.1(b)(3)(A)-(B)). The pleading requirements under Rule 23.1 are "atypically rigorous" and impose "a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)." *Gould v. Moynihan*, 275 F. Supp. 3d 487, 494 (S.D.N.Y. 2017) (citations omitted). Although Rule 23.1 "sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law." *Id.* (citation omitted).

Here, Delaware law applies because G2 FMV and G2 IG are both Delaware limited liability companies. *See id.*; Compl. ¶¶ 13–14. Under Delaware law, "[t]he derivative suit is a corporate concept grafted onto the limited liability company form," such that "case law governing corporate derivative suits is equally applicable to suits on behalf of an LLC." *Clifford Paper, Inc. v. WPP Inv'rs, LLC*, C.A. No. 2020-0448-JRS, 2021 WL 2211694, at *6 (Del. Ch. June 1, 2021) (citations omitted).

It is "a cardinal precept" of Delaware law that "directors, rather than shareholders, manage the business and affairs of the corporation," including whether and when to bring litigation. *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d 244. Further, it is presumed that directors are "faithful to their fiduciary duties," *Beam*, 845 A.2d at 1048, and will consider a shareholder demand on "an informed basis, in good faith." *Aronson*, 473 A.2d at 812. Thus, Delaware law bars a stockholder from commencing derivative litigation on behalf of a corporation unless the stockholder (i) first makes a pre-suit demand upon the board to commence an action on behalf of the company (and the board wrongfully refuses to do so) or (ii) pleads *particularized factual allegations* demonstrating

16

that a demand would be "futile" because a majority of the board is incapable of making a disinterested and independent judgment as to whether the corporation should pursue the claims. *Rales v. Blasband*, 634 A.2d 927, 932–34 (Del. 1993).

Where, as here, Plaintiff elected to forego making a pre-suit demand on either G2 FMV or G2 IG, Plaintiff faces a "heightened pleading burden." *In re GoPro, Inc.*, C.A. No. 2018-0784-JRS, 2020 WL 2036602, at *7–8 (Del. Ch. Apr. 28, 2020); Del. Ch. Ct. R. 23.1.3.  Plaintiff must allege particularized facts for each of its claims in order for demand to be excused.[4]  *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 , 977 n.48 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004) ("Demand futility analysis is conducted on a claim-by-claim basis.").  Specifically, Plaintiff must "'inform[ ] defendants of the precise transactions at issue' by describing 'with particularity' the 'specific misconduct in which each defendant is alleged to have participated.'"  *In re GoPro, Inc.*, 2020 WL 2036602, at *8 (citation omitted).  In assessing the demand futility allegations, the court "need not credit 'conclusory allegations' or 'inferences that are not objectively reasonable.'"  *Id.* (citation omitted); *Brehm*, 746 A.2d at 255 ("[C]onclusory allegations are not considered as expressly pleaded facts or factual inferences."); *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007) ("Vague or conclusory allegations do not suffice to challenge the presumption of a director's capacity to consider demand.").  As there are virtually no non-conclusory particularized factual allegations as to Sams and de la Rua, Plaintiff cannot meet this heightened burden.

Delaware courts have established two tests for determining when demand is futile.  The first is the so-called *Aronson* test, which provides that, when a derivative plaintiff seeks to

---

[4] Section 18-1003 of the Delaware Limited Liability Company Act likewise states that "[i]n a derivative action, the complaint shall set forth *with particularity* the effort, if any, of the plaintiff to secure initiation of the action by a manager or member or *the reasons for not making the effort*."  Del. Code tit. 6, § 18-1003 (emphasis added).

challenge a specific decision of a board of directors, demand is excused if, based on particularized facts, "a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814.  It is well-settled that "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815.

A different test applies when a derivative plaintiff does not challenge a specific board action or decision.  In such cases, the Court must "examine whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations," *i.e.*, whether the board is disinterested and independent (the first *Aronson* prong).  *Rales*, 634 A.2d at 933–34.

Plaintiff can plead "interestedness" in two ways.  First, by alleging particularized facts showing that the wrongdoing at issue resulted in a director receiving a material "personal financial benefit . . . not equally shared by the stockholders."  *Rales*, 634 A.2d at 936.  Second, by pleading particularized facts showing that "the directors face a 'substantial likelihood' of personal liability, [so that] their ability to consider a demand impartially is compromised." *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *12 (Del. Ch. Oct. 7, 2003) (citation omitted); *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (explaining demand will be excused only in the "rare case" presenting "egregious" facts).  A "mere threat of personal liability" will not suffice.  *Rales*, 634 A.2d at 936.  The interestedness of each board member must be assessed using a "detailed, fact-intensive, director-by-director analysis."  *In re INFOUSA S'holders Litig.*, 953 A.2d at 985.

Where, as here, the defendants are exculpated from liability for certain conduct, "then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts." *Wood*, 953 A.2d at 141.  Plaintiff must allege conduct that was at least grossly negligent in light of the exculpation clauses in G2 FMV and G2 IG's operative agreements, which Plaintiff has not done.

Undermining a director's independence requires Plaintiff to allege particularized facts showing that the director was so under the influence of an interested party that his or her discretion is compromised.  *Levine v. Smith*, 591 A.2d at 205.  Plaintiff does not do so.

The Complaint does not specify whether *Aronson* or *Rales* applies to each of Plaintiff's claims.  Indeed, this lack of specificity pervades the Complaint, which alleges no particularized facts as to when, how, or by whom any of the transactions or acts were approved or were not prevented.  (*See, e.g.*, Compl. ¶ 202 (alleging that the individual defendants either "approv[ed], assist[ed], carr[ied] out, facilitate[ed], encourage[ed], and/or fail[ed] to prevent the Transactions."))  As Delaware courts have stated, "when the plaintiff struggles consistently to characterize the nature of the underlying wrongful conduct that gives rise to his claims, this imprecision signals that he may not have pled such conduct with particularity."  *In re GoPro, Inc.*, 2020 WL 2036602, at *8 (citing *Brehm*, 746 A.2d at 254).

## III.   THE COMPLAINT FAILS TO ADEQUATELY ALLEGE THAT DEMAND WAS FUTILE

To excuse demand under the first prong of *Aronson* and under *Rales*, Plaintiff is required to plead particularized facts on a manager-by-manager basis for each claim that a majority consisting of at least two managers lack independence or are so interested in each of the challenged actions that they cannot impartially consider a demand.  *See Beam*, 845 A.2d at 1046 n.8, 1048–49 (Del. 2004).  Plaintiff fails to do so.

19

The Complaint is devoid of the requisite manager-by-manager analysis, much less for each claim. *See Postorivo v. AG Paintball Holdings, Inc.*, Civ. No. 2991-VCP, 2008 WL 553205, at *6-7 (Del. Ch. Feb. 29, 2008) (dismissing derivative complaint containing "no particularized facts indicating misconduct, bias, disinterestedness . . . on a director-by-director basis"); *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (dismissing derivative complaint because it failed to "plead facts specific to each director, demonstrating that at least half of them could not have exercised disinterested business judgment"). In particular, the Complaint barely mentions Sams or de la Rua, two of the three managers of G2 FMV and G2 IG, and does not allege any particularized facts showing that they approved any of the challenged actions.

### A.      Plaintiff Fails to Allege Any Particularized Facts Showing That a Majority of the Managers Were Interested by Virtue of Alleged Liability

Plaintiff's unsupported and conclusory allegations do not create a reasonable doubt as to the interestedness of a majority of the managers, as it fails to allege particularized facts suggesting they were interested in any of the alleged transactions and actions.

#### 1.      Plaintiff Does Not Allege Particularized Facts Demonstrating a Substantial Likelihood of Any Manager's Liability for Time-Barred Securities Fraud Claims

Plaintiff's Section 10(b) and Rule 10b-5 claim (Count One) is based solely on Plaintiff's own investment in G2 FMV allegedly made on July 7, 2014, and is time barred by the applicable five-year statute of repose. Specifically, Plaintiff asserts that the individual defendants made allegedly "misleading statements and omissions" which "caused Plaintiff to purchase shares of G2 FMV common stock at prices that were artificially inflated" on July 7, 2014.[5]  (Compl. ¶¶

---

[5] The Section 10(b) and Rule 10b-5 claim cannot be brought derivatively *on behalf* of G2 FMV and G2 IG because the entities are not and could not be alleged to be purchasers of securities.

114, 191.)  Critically, because Plaintiff fails to state a Section 10(b) and Rule 10b-5 claim, its only federal law claim, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss the Complaint.  *See Pope*, 586 F. App'x at 4.

Private actions brought under Section 10(b) are subject to "a two-year statute of limitations and a five-year statute of repose."  *Seagrape Inv'rs LLC v. Tuzman*, No. 19-CV-9736 (RA), 2020 WL 5751232, at *13 (S.D.N.Y. Sept. 25, 2020) (citations omitted).  The five-year statute of repose is "a fixed statutory cutoff, which is independent of a plaintiff's awareness of the violation [under Section 10(b)] and is not subject to equitable tolling."  *Id.* at *14 (citation omitted).  The statute of repose begins to run "on the date the parties have committed themselves to complete the purchase or sale transaction," *not* from "the time of the last alleged misrepresentation (even when made after the final purchase or sale of the securities)."  *Id.* (citing *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009)).  Thus, "any claim under Section 10(b) and Rule 10b-5 relating to a sale or purchase of securities that occurred outside the five-year statute of repose is time-barred."  *Id.* (citation omitted).

Plaintiff also fails, with respect to any defendant, to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" – *i.e.*, an intent to defraud.  15 U.S.C. § 78u-4(b).  Plaintiff's conclusory allegations that the individual defendants "had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth" based on their "positions of control and authority" (Compl. ¶¶ 193–94) are insufficiently particularized.  *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (explaining that, for purposes of determining the proper defendants for 10b-5 purposes, "[a]s a general matter, 'officer or director status alone does not constitute control'" (citation omitted)).

    2.    **Plaintiff Does Not Allege Particularized Facts Demonstrating a Substantial Likelihood That a Majority of the Managers Have Liability on the Remaining Derivative Claims**

Plaintiff's claims for breach of fiduciary duties and aiding and abetting breaches of fiduciary duties claims (Counts Two and Five), waste (Count Three), and unjust enrichment (Count Four), come nowhere close to alleging the necessary particularized facts on a manager-by-manager basis to demonstrate that a majority of the managers face a substantial likelihood of liability, as discussed *supra* pages 11–14. That failure prevents Plaintiff from establishing demand futility. *See Ellis v. Gonzalez*, CV 2017-0342-SG, 2018 WL 3360816, at *9 (Del. Ch. July 10, 2018), *aff'd sub nom. Ellis on Behalf of AbbVie Inc. v. Gonzalez*, 205 A.3d 821 (Del. 2019) ("[T]he lack of any well-pled allegations suggesting the Director Defendants' involvement with [the purportedly misleading statements] would independently preclude a finding of demand futility."); *Postorivo*, 2008 WL 553205, at *9 ("Even well-pled allegations of waste, however, do not automatically excuse the requirement to make demand; a derivative plaintiff still must satisfy the requirements of the *Aronson* or *Rales* test, whichever is applicable."); *In re MetLife Inc. Deriv. Litig.*, 2020 WL 4746635, at *18 (holding demand was not excused for unjust enrichment claim based on invalidity of breach of fiduciary duties claim).

**B.    Plaintiff Fails to Allege Any Particularized Facts Showing That a Majority of the Managers Otherwise Lack Independence**

The Complaint is equally lacking particularized factual allegations to create a reasonable doubt as to the independence of the managers of G2 FMV and G2 IG.

Plaintiff must allege that a manager is so "beholden to [an interested party] or so under [his or her] influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936. A complaint must allege "a relationship that is so substantial" that a manager "would be more willing to risk his or her reputation than risk the relationship with the interested [party]." *In re*

22

*IAC/Interactivecorp Secs. Litig.*, 478 F. Supp. 2d 574, 600 (S.D.N.Y. 2007) (quoting *Beam*, 845 A.2d at 1049, 1052); *Beam*, 845 A.2d at 1051 (holding that allegations that directors "developed business relationships before joining the board . . . are insufficient, without more, to rebut the presumption of independence"). Plaintiff does not even attempt to satisfy this requirement by alleging any current relationship between the managers. Nor does the Complaint adequately allege the managers received a financial benefit not equally shared by other investors.

### C.    Plaintiff Fails to Allege Any Particularized Facts Showing That Any Transaction Was Otherwise Not the Product of a Valid Exercise of Business Judgment

To satisfy the second prong of *Aronson*, Plaintiff must allege particularized facts on a claim-by-claim basis creating a reasonable doubt that "the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814; *Beam*, 833 A.2d at 977 n.48. A plaintiff seeking to establish demand futility under Aronson's second prong bears a "heavy burden." *Ryan v. Gursahaney*, C.A. No. 9992–VCP, 2015 WL 1915911, at *8 (Del. Ch. Apr. 28, 2015), *aff'd*, 128 A.3d 991 (Del. 2015). "[A]bsent particularized allegations to the contrary, the directors are presumed to have acted on an informed basis and in the honest belief that their decisions were in furtherance of the best interests of the corporation and its shareholders." *Highland Legacy Ltd. v. Singer*, No. Civ.A. 1566–N, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006) (explaining that the second prong of *Aronson* is directed to decisions that are "so extreme or curious as to itself raise a legitimate ground to justify further inquiry." (citation omitted)). The presumption that the business judgment rule applies can be rebutted if the particularized facts raise a reasonable doubt "that the informational component of the directors' decisionmaking process, *measured by concepts of gross negligence*, included consideration of all material reasonably available." *Ryan*, 2015 WL 1915911, at *8. Plaintiff fails to do so.

The Complaint does not contain any particularized factual allegations indicating that the managers approved any of the transactions, much less showing what the managers' decisionmaking process was or what material they may have considered.  The Complaint's only specific allegation regarding the business judgment rule are the conclusory assertion that "the Transactions were not the product of a valid exercise of business judgment by the boards of the G2 Companies, because such payments were unlawful and fraudulent, as described above, in light of the G2 Companies' insolvency."  (Compl. ¶ 220.)  However, there are no particularized factual allegations indicating any involvement by any of the managers in any actions taken after G2 FMV and G2 IG were allegedly insolvent by March 3, 2017 (*Id.* ¶ 145), or that there was any intention to "keep" either G2 IG or G2 FMV insolvent.  (*Id.* ¶ 220.)

## IV. PLAINTIFF IS NOT ENTITLED TO DECLARATORY OR INJUNCTIVE RELIEF, A CONSTRUCTIVE TRUST, OR AN ACCOUNTING

The Complaint does not establish Plaintiff's entitlement to the declaratory relief sought. The grant of declaratory relief is discretionary and, "[i]n order to decide whether to entertain an action for declaratory judgment," a district court asks two questions: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).  Thus, "[d]ismissal . . . is warranted where ... the declaratory relief [plaintiff] seeks is duplicative of his other causes of action."  *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (dismissing declaratory judgment where relief sought was duplicative of a fiduciary duty claim).

Here, Plaintiff contends controversies exists as to the individual defendants' "ability to serve in any executory or supervisory role or function on behalf of the G2 Companies" and "who should run the G2 Defendants on an interim or permanent basis."  (Compl. ¶ 233.)  Plaintiff

seeks "a finding that G2 Companies are alter egos of Morley" and "a determination of which entity or individual has an ownership interest in G2 FMV and the amount of such ownership interest." (*Id.* ¶ 234.)

The declaratory relief Plaintiff seeks would neither "serve a useful purpose in clarifying or settling the legal issues involved" or "finalize the controversy and offer relief from uncertainty." First, the Complaint does not allege that G2 FMV and G2 IG are "alter egos of Morley," nor is an alter ego claim brought against Morley. Second, determining the ownership of G2 FMV is irrelevant to either of the controversies Plaintiff asserts exist. To the extent Plaintiff believes such findings are necessary to prove its claims, they would be duplicative.[6]

## CONCLUSION

For the foregoing reasons, this Court should dismiss the direct and derivative claims with prejudice.

Dated: New York, New York
      August 30, 2021

SCHULTE ROTH & ZABEL LLP

By:  /s/  Howard Schiffman
     Howard Schiffman
     George H. Rowe
     919 Third Avenue
     New York, New York  10022
     (212) 756-2000
     howard.schiffman@srz.com
     george.rowe@srz.com

*Attorneys for G2 FMV, LLC, G2 Investment Group, LLC, and Jonathan Todd Morley*

---

[6] The Complaint also fails to demonstrate Plaintiff's entitlement to injunctive relief. "An injunction is a remedy and not a separate cause of action." *Lekki Cap. Corp. v. Automatic Data Processing, Inc.*, No. 01 CIV.7421(LMM), 2002 WL 987147, at *3 (S.D.N.Y. May 14, 2002).

Similarly, Counts Seven (equitable constructive trust) and Eight (equitable accounting) are requests for specific remedial relief, not separate causes of action. *See Seiden v. Kaneko*, C.A. No. 9861-VCN, 2015 WL 7289338, at *14 (Del. Ch. Nov. 3, 2015). Accordingly, "their viability depends upon the success of Plaintiff's claims." *Id.*