**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

INTEGRATED MEDIA RESOURCES, LLC, Individually
and Derivatively on Behalf of Nominal Defendant
G2 FMV, LLC and also Double Derivatively on
Behalf of Nominal Defendant G2 INVESTMENT
GROUP, LLC.

          Plaintiffs,

v.

JONATHAN TODD MORLEY, DORI V.
KARJIAN, DAVID SAMS, JONATHAN
LERMAN, ANTONIO DE LA RUA, MARIA
BOYAZNY,

          Defendants,

And

G2 FMV, LLC, and G2 INVESTMENT GROUP, LLC,

          Nominal Defendants.

---------------------------------------------------------------- X

Case No. 21 Civ. 4993 (DLC)

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT AS TO DEFENDANTS DAVID SAMS, JONATHAN LERMAN, AND MARIA BOYAZNY

MURPHY & McGONIGLE, P.C.

Eric A. Bensky
Steven D. Feldman
1185 Avenue of the Americas
21st Floor
New York, New York  10036
(212) 880-3999
Eric.Bensky@mmlawus.com

*Attorneys for David Sams, Jonathan Lerman, and Maria Boyazny*

## **TABLE OF CONTENTS**

**BACKGROUND** ................................................................................................................ 2

**ARGUMENT** .................................................................................................................... 2

    **I.**    **Plaintiff Improperly Attempts to Rely on Ambiguous Group Pleading** ................... 3

    **II.**    **The Limited Allegations Specific to the Moving Defendants Raise No Inference of Liability** ................ 5

    **III.**    **Plaintiff's Civil Conspiracy Claim Fails** ...................................................... 8

    **IV.**    **Plaintiff Failed to Serve Ms. Boyazny** ........................................................ 9

**CONCLUSION** ............................................................................................................... 11


# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alexander & Alexander of New York, Inc. v. Fritzen,
   68 N.Y.2d 968 (1986) ..................................................................................................9

Atlantis Plastics Corp. v. Sammons,
   558 A.2d 1062 (Del. Ch. 1989)...................................................................................9

DeAngelis v. Corzine,
   17 F. Supp. 3d 270 (S.D.N.Y. 2014)..........................................................................3

Deutsche Bank Nat. Tr. Co. v. O'King,
   51 N.Y.S.3d 523 (2d Dep't 2017)..............................................................................10

Hebrew Inst. for Deaf & Exceptional Child. v. Kahana,
   870 N.Y.S.2d 85 (2d Dep't 2008)................................................................................9

ICD Capital v. CodeSmart Holdings,
   No. 14 Civ. 8355 (JFK), 2020 WL 815733 (S.D.N.Y. Feb. 19, 2020)..................3, 4

US Bank, Nat'l Ass'n v. Schumacher,
   101 N.Y.S.3d 190 (2d Dep't 2019)............................................................................10

**Other Authorities**

CPLR § 308.......................................................................................................................10

Federal Rules of Civil Procedure Rule 4(e).....................................................................10

Defendants David Sams, Jonathan Lerman, and Maria Boyazny (collectively, the "Moving Defendants"), by their counsel Murphy & McGonigle, P.C., respectfully submit this Memorandum of Law in Support of their Motion to Dismiss complaint ("Complaint") filed by Plaintiff Integrated Media Resources, LLC in the above-captioned action.  As detailed below, the Complaint is fatally flawed in myriad ways, including that it utterly fails to make specific allegations of wrongdoing as to the Moving Defendants.  Rather than allege particular improper acts, the Complaint instead simply targets the "Insider Defendants" or "Defendants" for engaging in purported group behavior.  But such group pleading is insufficient to allege liability.  Further, Plaintiff's civil conspiracy claim is not recognized under New York law and is plainly time-barred by Delaware law.  In addition, Plaintiff has failed to effect proper service of process on Ms. Boyazny.

The Moving Defendants join and incorporate herein by reference the arguments made by nominal defendants G2 FMV, LLC ("G2 FMV") and G2 Investment Group, LLC ("G2 IG") and Defendant Jonathan Todd Morley in their Memorandum of Law in support of their Motion to Dismiss.  As explained in that brief, (i) the civil conspiracy claim is barred by the applicable statute of limitations, and the only allegations in support of it are conclusory and fail to allege adequately the requisite underlying wrongful act, (ii) the Complaint's securities fraud claim – its sole basis for federal jurisdiction – is not timely and does not allege with particularity that any of the Moving Defendants acted with an intent to the defraud, and (iii) the Complaint's derivative claims are barred as a threshold matter by Plaintiff's failure to make a pre-suit demand and the absence of particularized facts on a manager-by-manager basis sufficient to constitute a prima facie demonstration of liability or interestedness.

## BACKGROUND

According to the Complaint,[1] Defendant David Sams was a member of the Management Committee of G2 FMV and the Executive Committee of G2 IG.  (¶ 17)  He also served as the Vice Chairman of G2 IG.  (¶ 17)  In or around 2011, he invested $1,000,000 in G2 FMV, and acquired 21,700 Class A Units, representing 2.53% of the total issued and outstanding units of G2 FMV.  (¶ 138)  According to a capitalization table for G2 FMV dated December 31, 2019, after his initial investment of $1,000,000, Mr. Sams acquired additional Class A Units, bringing his total holdings to 200,000 units, representing 21.16% of the total issued and outstanding units of G2 FMV.  (¶ 139)

Jonathan Lerman served as the Chief Financial Officer ("CFO") of G2 FMV and G2 IG.  (¶ 19)  He was also an employee of MB Global Partners ("MBG").  (¶ 95)

Maria Boyazny is the owner of an entity that is a 7% equity owner in G2 FMV.  Plaintiff alleges (without basis) that Ms. Boyazny, through a separate contractual right, had the right to participate in G2 IG's Executive Committee meetings.  (¶ 20)

## ARGUMENT

In addition to adopting the arguments in the brief submitted by the Nominal Defendants and Mr. Morley, the Moving Defendants submit this memorandum separately to assert additional arguments specific to themselves, including that the Complaint's blanket, group allegations are insufficient to state a claim upon which relief may be granted.

---

[1] Facts alleged in the Complaint are presumed to be true solely for purposes of this motion to dismiss, unless otherwise noted.

### I.      Plaintiff Improperly Attempts to Rely on Ambiguous Group Pleading

Plaintiff's allegations against the Moving Defendants are sorely lacking. Indeed, the Complaint is noteworthy for its lack of specific allegations concerning each of the three. Rather than allege particular acts by these individuals, the Complaint amalgamates the individuals into a group with others purportedly acting as one as the "Insider Defendants" or the "Defendants."

Plaintiff does not point to even a single misstatement intentionally made by any of the Moving Defendants. Similarly, the Complaint fails to allege any specific wrongful act or negligent action taken by any of them. Instead of offering specific allegations of wrongdoing by particular individuals, Plaintiff attempts to avoid the lack of a good faith factual basis to make such assertions by alleging wrongdoing by the group as a whole. But such ambiguous group pleading is impermissible.

The "group pleading doctrine permits a court to presume, at the motion-to-dismiss stage, that 'group-published' documents such as 'statements in prospectuses, registration statements, annual reports, [and] press releases' are attributable to 'individuals with direct involvement in the everyday business of the company.'" DeAngelis v. Corzine, 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014). However, the doctrine also "generally requires non-conclusory allegations that give rise to the inference that the individual defendant was involved in the development of the misleading document – allegations which are conspicuously absent from the [complaint]." ICD Capital v. CodeSmart Holdings, No. 14 CIV. 8355 (JFK), 2020 WL 815733, at *5 (S.D.N.Y. Feb. 19, 2020); see also DeAngelis, 17 F. Supp. 3d at 281–82 ("In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible."). Additionally, an individual's position as an officer or director, without more, is an insufficient basis on which to attribute allegedly false statements

contained in a corporate document.  CodeSmart Holdings, 2020 WL 815733, at *5 (holding that defendant's position as COO, co-founder, and member of board of directors was not sufficient, on its own, to automatically attribute PPM's purportedly false statements to her as an individual).

Here, Plaintiff claims that the G2 Companies' Offering Materials contained false and misleading statements that all of the Insider Defendants were allegedly "responsible for creating."  (¶ 193)  Plaintiff further makes the conclusory allegation that the Insider Defendants had "actual knowledge of the misrepresentations and omissions of material facts . . . or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts."  (¶ 194)

Scrutinizing those allegations reveals that they fail.  As to Mr. Lerman, while he served as the CFO of G2 FMV and G2 IG (¶ 19), the Complaint is bereft of any details concerning any role he allegedly played creating, reviewing, or disseminating any of the G2 Companies' Offering Materials.  Similarly, while the Complaint alleges that Mr. Lerman sent Plaintiff audited 2012 financial statements and unaudited 2013 financial statements containing purportedly materially false and misleading information (¶ 74), the Complaint fails to allege that he intentionally or recklessly disseminated any false information – or even what information was false or why.

The allegations similarly fail as to Ms. Boyazny. While she allegedly had a contractual right to participate in G2 IG's Executive Committee meetings (¶ 20), there is no allegation that she was involved with creating, reviewing, or disseminating any of the G2 Companies' Offering Materials.  The Complaint alleges that she attended Executive Committee meetings, but there is no allegation that she undertook any role in operating G2 FMV or G2 IG.  While the Complaint

4

also attempts to connect MBG with Ms. Boyazny and G2 IG via a 2010 press release (¶ 87), there is no specific allegation of any wrongdoing by her or MBG.[2]

The Complaint is similarly barren as to Mr. Sams. It alleges that he served on the Management and Executive committees of G2, but it fails to detail any wrongdoing by him. The Complaint notes that G2 IG purportedly owed approximately $18.5 million in outstanding loans to various entities and Mr. Sams, but there is no allegation that the loans were illegitimate. Similarly, the fact that Mr. Sams invested $1,000,000 in G2 FMV in 2011, and acquired 21,700 Class A Units, but later, in 2019, owned additional shares is also unremarkable. Although the Complaint lists those allegations under the heading, "Hiding Undisclosed Losses and Fraudulent Loans," it never alleges how Mr. Sams' acquisition of additional Unit was wrongful. Nothing suggests, for example, that he hid losses or participated in fraudulent loans (which he did not).

For these reasons, the Complaint's group allegations against Mr. Sams, Mr. Lerman, and Ms. Boyazny are insufficient to state a claim as to any of them.

## II.     The Limited Allegations Specific to the Moving Defendants Raise No Inference of Liability

As to each of the Moving Defendants, the Complaint makes remarkably few allegations, and the few it does make do not come close to raising any inference of liability.

The allegations specific to Mr. Lerman are limited to the following:

- "On April 24, 2014, Lerman sent Plaintiff audited financial statements for 2012 and unaudited financial statements for 2013 containing materially false and misleading information." (¶ 74)

---

[2]     Plaintiff alleges that Barrett Wissman was "led to believe" by one or more unidentified individuals that G2 IG would receive revenue from its ownership stake in MBG, but that G2 IG actually covered certain operational expenses (including Ms. Boyazny's salary) until MBG obtained assets under management (AUM) of $500,000. (¶¶ 92, 94) That allegation is also insufficient to state any claim against Ms. Boyazny (or anyone else).

- "On April 29, 2014, Lerman admitted to a former investor, that 'G2 erred in sending [him] a K-1 for 2010,' for an investment of $1,000,000 in 2011 that was inappropriately back-dated and treated as a loan, purportedly by mistake. Lerman expressed, 'G2 apologizes for that mistake,' and assured that 'G2 was working with its outside accounting firm to correct G2's records and filings.'" (¶ 75)

- "On March 3, 2017, Lerman filed an affidavit in an unrelated matter admitting that both G2 FMV and G2 IG were insolvent. According to Lerman, G2 IG and G2 FMV were experiencing a 'liquidity shortage primarily associated with a revenue shortfall' and because the G2 Companies' liabilities exceeded its assets, it was unable to meet its debt obligations." (¶ 145)

- "Morley also responded, copying Sams: 'Asking [Sams] and [Lerman], apologies. They're not worth very much as an indicator of our progress . . . as there is continued, low cash flow. We are doing fine but the value is in the appreciation of stuff like Rising. All cash flows have been reinvested so the financials don't really tell the whole story.'" (¶ 148 (alteration marks in Complaint))

Separately or collectively, those allegations are insufficient. While the Complaint alleges Mr. Lerman sent false and misleading information, it fails to identify that information or explain why it is supposedly false or misleading. Nor is there any allegation that Mr. Lerman acted intentionally or recklessly, that Plaintiff relied on the information, or that the information caused any losses. Meanwhile, the information Mr. Lerman imparted regarding the 2010 K-1 and 2017 liquidity shortage is not even alleged to be false, and the mere mention of Mr. Lerman in an email that he did not send (and on which he was not even copied) is meaningless.

The specific allegations concerning Ms. Boyazny are limited to the following:

- "On October 25, 2010, a press release was issued announcing the launch of [MBG] by Boyazny 'in partnership with G2 IG' to provide 'investment management, advisory and other financial services to institutional investors and private clients around the world.'" (¶ 87)

- "Although Wissman was led to believe G2 IG would receive revenue from its ownership stake in [MBG]; in reality, G2 IG was being used to pay for the operational expenses of [MBG] . . . ." (¶ 92)

- "According to Section 3.4(d) of the Operating Agreement of MB Credit HoldCo, LLC, dated October 19, 2010, it states: 'Until such time as the Company's assets under management (together with the assets under management of the Company's

6

subsidiaries) equals or exceeds $500 million (the '$500 AUM Date'): (i) [G2IG] shall employ and pay all compensation of, and bear all costs of providing benefits to, those persons dedicated to the operation of the Company,'" including Ms. Boyazny. (¶ 94)

Those allegations are plainly insufficient. Although Plaintiff claims that Mr. Wissman was "led to believe" that G2 IG's partnership with MBG would produce revenue (¶ 92), the person who led him to believe that is never identified. Plaintiff also acknowledges that a joint presentation explained that MBG was "supported by G2 Investment Group." (¶ 94) The most reasonable inference is that G2 IG helped fund MBG when the latter was starting up, but that the initial funding would end once MBG had accumulated $500 million in assets under management. That hardly suggests any wrongdoing by Ms. Boyazny.

The specific allegations concerning Mr. Sams are limited to the following:

- "The Management Committee of G2 FMV and the Executive Committee of G2 IG were controlled by Morley, de la Rua and Sams, who approved the series of transactions described below, giving rise to the claims herein." (¶ 6)

- "The business and affairs of G2 IG were managed and controlled by its Executive Committee, which was comprised by Morley and de la Rua and Sams." (¶ 38)

- "The business and affairs of G2 FMV were managed and controlled by its Management Committee, which – like G2 IG – was comprised by Defendants Morley and De la Rua and Sams." (¶ 41)

- "As of October 2016, G2 IG purportedly owed approximately $18.5 million in outstanding loans to entities controlled by Morley, de la Rua, and Sams, and the other Insider Defendants. They are documented as follows:

  | | |
  |---|---|
  | G2 FMV, LLC: | $1,631,584 |
  | THREE STICKS, LP: | $8,634,561 |
  | LUNA IMPERIAL S.A.: | $177,009 |
  | DAVE SAMS: | $1,363,387 |
  | AZURITE ASSET HOLDING: | $6,714,257 |
  | **TOTAL:** | **$18,520,798**" (¶ 122) |

- "In or around 2011, Sams invested $1,000,000 in G2 FMV, and acquired 21,700 Class A Units, representing 2.53% of total issued and outstanding units of G2 FMV." (¶ 138)

7

- "According to a capitalization table for G2 FMV dated December 31, 2019, Sams' investment of $1,000,000 remained the same; however, Sams' ownership increased to 200,000 Class A Units, representing 21.16% of total issued and outstanding units of G2 FMV." (¶ 139)

- "Sams served as a Director of Guggenheim Capital, LLC, an affiliate of Guggenheim Partners, until August 2011." (¶ 143)

- "Morley also responded, copying Sams: 'Asking [Sams] and [Lerman], apologies. They're not worth very much as an indicator of our progress . . . as there is continued, low cash flow. We are doing fine but the value is in the appreciation of stuff like Rising. All cash flows have been reinvested so the financials don't really tell the whole story.'" (¶ 148 (alteration marks in Complaint))

The allegation that Mr. Sams served on the Management Committee and Executive Committee, which approved a series of transactions with Plaintiff, fails to detail any wrongdoing. Similarly, that G2 IG owed money to Mr. Sams is hardly notable, and there is no allegation that any of the loans were illegitimate. Indeed, given the alleged cash flow problems emphasized by Plaintiff (see, e.g., ¶¶ 62, 83), it would appear perfectly reasonable for the G2 entities to borrow funds from members of their management and executive committees. That those individuals were not repaid the loans they advanced, and are now owed money by G2, appears to be a natural consequence of the alleged liquidity problems, is not wrongful, and certainly does not suggest any claim belonging to the entities. Similarly, the fact that Mr. Sams invested $1,000,000 in G2 FMV in 2011, and acquired 21,700 Class A Units, but later, in 2019, owned additional Units is also unremarkable. The Complaint fails to include allegations that would raise any inference of liability, let alone facts that would undermine more benign and plausible explanations, such as the possibility that Mr. Sams purchased units from another investor.

### III.   Plaintiff's Civil Conspiracy Claim Fails

In Count Ten, Plaintiff brings a direct claim against each defendant, including the Moving Defendants. Even beyond the fact that it is hopelessly conclusory (see, e.g., ¶ 252

8

("Defendants . . . conspired . . . to defraud Plaintiff, to breach or aid and abet in the breach of the fiduciary duties of Defendants Morley, de la Rua, and Karjian and to commit other torts . . . . "; ¶ 253 (alleging defendants "furthered the conspiracy by cooperation or lent aid and encouragement to or ratified and adopted the acts of the each other.")), the count is barred as a matter of law because civil conspiracy is not recognized under New York law and would be time-barred under Delaware law.

The Complaint fails to specify where the alleged acts took place, so it is unclear which state's law applies. For example, the Complaint alleges that Messrs. Wissman and Morley engaged in a series of communications about a business venture through phone, email, and meetings (¶¶ 44-51), but never indicates where they were located during those calls or meetings. The G2 companies operated out of New York, and if New York law applies, Count Ten plainly fails because, in New York, a conspiracy to commit a tort is "never of itself a cause of action." Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969 (1986). Accord Hebrew Inst. for Deaf & Exceptional Child. v. Kahana, 870 N.Y.S.2d 85, 86 (2d Dep't 2008) ("New York does not recognize civil conspiracy to commit a tort as an independent cause of action").

While Delaware recognizes a claim for civil conspiracy, any such claim here would be barred by Delaware's three-year statute of limitations. See Atlantis Plastics Corp. v. Sammons, 558 A.2d 1062, 1064 (Del. Ch. 1989) (applying three-year statute of limitations to civil conspiracy claim).

**IV.    Plaintiff Failed to Serve Ms. Boyazny**

According to the Affidavit of Service filed by Plaintiff (ECF No. 23), Plaintiff attempted to serve Ms. Boyazny by repeatedly delivering the summons and Complaint to an address on

9

Park Avenue (the "Park Avenue Address") where she does not reside. As set forth in the Affidavit of Service, when the process server attempted to serve her on June 30, 2021 at the Park Avenue Address, the "doorman/desk clerk" informed the process server that he had not seen Ms. Boyazny in months. (ECF No. 23 at 2) When the process server tried to serve her again on July 9, 2021 at the Park Avenue Address, the "doorman/ desk clerk" again informed the process server that he had not seen her in months. (Id.)

Nevertheless, aware that Ms. Boyazny had not been present at the Park Avenue Address in months, the process server returned to the Park Avenue Address on August 11, 2021 and left the summon and Complaint with a "doorman/ desk clerk." (Id.) Thereafter, the process server mailed the summons and complaint to the Park Avenue Address on August 12, 2021. (Id.)

Rule 4(e) of the Federal Rules of Civil Procedure provides that an individual may be served by (1) following state law for serving a summons in a court action; (2) delivering a copy of the summons and complaint to the individual personally; or (3) leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age. Fed. R. Civ. P. 4(e). New York law, in turn, requires (i) personal delivery to the defendant; or (ii) delivery to a person of suitable age at the defendant's dwelling place or usual place of abode, plus mailing the papers to the defendant at the defendant's last known residence. N.Y. CPLR § 308.

New York courts define a dwelling place as the location where "the defendant is actually residing at the time of delivery," and usual place of abode as the "place at which the defendant lives with a degree of permanence and stability and to which he intends to return." Deutsche Bank Nat. Tr. Co. v. O'King, 51 N.Y.S.3d 523, 525 (2d Dep't 2017); US Bank, Nat'l Ass'n v. Schumacher, 101 N.Y.S.3d 190, 191 (2d Dep't 2019). Here, the statements contained in Plaintiff's own Affidavit of Service themselves establish that Ms. Boyazny does not reside at the

Park Avenue Address where service was attempted. Accordingly, service of process is defective as to Ms. Boyazny, and the Complaint must be dismissed as to her for that reason as well.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in Mr. Morley's and the Nominal Defendants' Memorandum of Law, Defendants David Sams, Jonathan Lerman, and Maria Boyazny respectfully request that the Court dismiss the Complaint as to each of them.

DATED: August 30, 2021

    Respectfully submitted,

    **MURPHY & MCGONIGLE, P.C.**

By:   /s/ Eric A. Bensky
    Eric A. Bensky
    Steven D. Feldman
    1185 Avenue of the Americas, Fl. 21
    New York, New York 10036
    Tel. (212) 880-3999
    Eric.Bensky@mmlawus.com

    *Attorneys for Defendants David Sams, Jonathan Lerman, and Maria Boyazny*