**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X

INTEGRATED MEDIA RESOURCES, LLC, Individually
and Derivatively on Behalf of Nominal Defendant
G2 FMV, LLC and also Double Derivatively on
Behalf of Nominal Defendant G2 INVESTMENT
GROUP, LLC.,

                Plaintiff,

v.

JONATHAN TODD MORLEY, DORI V.
KARJIAN, DAVID SAMS, JONATHAN
LERMAN, ANTONIO DE LA RUA, MARIA
BOYAZNY,

                Defendants,

And

G2 FMV, LLC, and G2 INVESTMENT GROUP,
LLC,

                Nominal Defendants.

-------------------------------------------------------- X

Case No. 21 Civ. 4993 (DLC)

**ORAL ARGUMENT REQUESTED**

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT AS TO DEFENDANTS DAVID SAMS, JONATHAN LERMAN, AND MARIA BOYAZNY

MURPHY & McGONIGLE, P.C.

Eric A. Bensky
Steven D. Feldman
1185 Avenue of the Americas
21st Floor
New York, New York  10036
(212) 880-3999
Eric.Bensky@mmlawus.com

*Attorneys for David Sams, Jonathan Lerman, and Maria Boyazny*

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.   The Opposition's Arguments Do Not Support the Complaint's Impermissible  Group

Pleading........................................................................................................................ 2

II.  The Opposition Does Not Identify Adequate Allegations of Scienter or    Wrongdoing

Against Any of the Moving Defendants. ..................................................................... 4

A. Lerman ............................................................................................................... 4

B. Sams ................................................................................................................... 5

C. Boyazny............................................................................................................... 7

III.   The Opposition's Arguments Cannot Save the Civil Conspiracy Count. ..................... 8

IV.   Plaintiff's Inadequate Service Attempts Should Not Be Excused. ................................ 9

CONCLUSION ................................................................................................................ 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>In re Banco Bradesco S.A. Securities Litigation</u>,
  277 F.Supp.3d 600 (S.D.N.Y. 2017)...........................................................................6

<u>DeAngelis v. Corzine</u>,
  17 F. Supp. 3d 270 (S.D.N.Y. 2014).........................................................................3

<u>Novak v. Kasaks</u>, 216 F.3d 300 (2d Cir. 2000) ............................................................7

<u>Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.</u>,
  531 F.3d 190 (2d Cir. 2008)......................................................................................6

<u>ICD Capital v. CodeSmart Holdings</u>,
  No. 14 Civ. 8355 (JFK), 2020 WL 815733 (S.D.N.Y. Feb. 19, 2020)......................3


**Other Authorities**

Federal Rules of Civil Procedure Rule 4(d)....................................................................9

## INTRODUCTION

Defendants David Sams, Jonathan Lerman, and Maria Boyazny (collectively, the "Moving Defendants"), by their counsel Murphy & McGonigle, P.C., respectfully submit this reply brief in further support of their motion to dismiss the complaint filed by Plaintiff Integrated Media Resources, LLC in the above-captioned action.  As detailed below and in their previously filed Memorandum of Law in support of their motion to dismiss (Dkt. 34) ("Memorandum" or "Mem."), Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss Complaint as to Defendants David Sams, Jonathan Lerman, and Maria Boyazny (Dkt. 40) ("Opposition" or "Opp.") fails to overcome the fundamental flaws in the Verified Complaint (Dkt. 1) ("Complaint" or "Compl.") with respect to those defendants.

As a preliminary matter, for the reasons addressed in Mr. Morley's and the Nominal Defendants' reply brief (the arguments from which the Moving Defendants hereby incorporate herein), Plaintiff's argument with respect to the statute of limitations for the Complaint's sole federal claim is frivolous.  Additionally, the Complaint mischaracterizes that same claim as derivative rather than direct.  The entire case can and should be dismissed for either or both of those reasons alone.

Even beyond that, the Opposition does not dispute that the Complaint cannot point to even a single misstatement intentionally made by any of the Moving Defendants.  Plaintiff complains that the Moving Defendants' Memorandum points to "decontextualized excerpts to argue that the Complaint fails to allege wrongdoing" (Opp. at 11), but the Opposition then does nothing more than repeat those same excerpts (see, e.g., id. at 12-13).  Indeed, there is nothing more it could do.  By failing to include any individualized allegations of misconduct by Mr. Sams, Mr. Lerman, or Ms. Boyazny in the Complaint, Plaintiff has foreclosed any ability to point to facts that could support its claims as to them.

Indeed, judging from the Opposition, it seems that the only reason Plaintiff included the Moving Defendants in the Complaint is that their names "appear[]" or are "present" on a few documents.  (See Opp. at 12, 13.)  That is not enough.  It is not enough to state a claim or to satisfy the heightened pleading requirements that apply to the federal securities fraud count, and it is not enough to state a claim for the state law counts (most of which are unavailable regardless due to Plaintiff's failure to make the demand required to assert such claims derivatively).

As explained below, the Complaint's scant allegations against the Moving Defendants are woefully insufficient to satisfy the requirements for group pleading, to set forth any wrongdoing or scienter on their parts, or to support the Complaint's civil conspiracy count against them.

## **ARGUMENT**

I.      **The Opposition's Arguments Do Not Support the
        Complaint's Impermissible Group Pleading.**

The Opposition's argument that the Moving Defendants and others "collectively" prepared "various documents included in" broadly defined "Offering Materials" (Opp. at 8) embodies precisely the sort of vague, generalized allegations that the Group Pleading Doctrine does not tolerate.  To begin with, Plaintiff defines "Offering Materials" so broadly and vaguely as to render the term worthless for purposes of identifying what supposed misstatements were allegedly prepared by which specific defendants.  Similar to the Complaint (see Compl. ¶ 58), the Opposition defines "Offering Materials" to include (i) "investor materials which contained valuations of G2 IG," (ii) "financial statements of G2 IG for 2012 and 2013," and (iii) undefined "other marketing materials, including for companies with ties to Insider Defendants." (Opp. at 2)  Without specifying which of those materials contain what misrepresentations and who specifically participated in the preparation of those documents and statements, Plaintiff's claim that its "allegations establish an inference that the Moving Defendants prepared or

2

approved the contents of the Offering Materials" (Opp. at 9) is meaningless.  That is especially so considering that the only portions of the materials that Plaintiff actually attempts to tie to the Moving Defendants seem to be biographical summaries that the Complaint does not allege to be inaccurate.  (See id.)

The Opposition also asserts, without citation, that Plaintiff "alleges facts to show that Sams, Boyazny, and Lerman were directly involved in the daily affairs of the G2 Companies as well as the preparation and/or approval of the offering materials" (Opp. at 10; see also id. at 8), but the Complaint is devoid of any allegations of day-to-day involvement.  Plaintiff's references to Mr. Sam's membership on the Management Committee and Executive Committee are hollow in the absence of any allegations regarding what his role as a member entailed.  Most importantly, the Complaint notably does not (and could not) allege that Mr. Sams had "direct involvement in the everyday business of the company," DeAngelis v. Corzine, 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014), or "in the development of [any] misleading document," ICD Capital v. CodeSmart Holdings, No. 14 CIV. 8355 (JFK), 2020 WL 815733, at *5 (S.D.N.Y. Feb. 19, 2020).  Nor does (or could) the Complaint allege (or the Opposition assert) that Mr. Lerman or Ms. Boyazny did so.

The Opposition claims in a footnote that Mr. Sams "exerted control" over the committees or companies (Opp. at 1 n.2), but the Complaint itself contains no such allegation (for good reason).  Similarly, while the Opposition states (erroneously) that Ms. Boyazny "participated in the G2 IG Executive Committee" (Opp. at 1 n.4; see also id. at 8), neither it nor the Complaint alleges when she supposedly participated, how she supposedly participated, or any other facts to suggest that she ever exercised her alleged "contractual right" to participate in that committee. Nor does Plaintiff explain why it thinks Ms. Boyazny's role in identifying potential investment

opportunities somehow gave her "knowledge of the inner workings of the company"
(Opp. at 8-9).  The Opposition does not even bother to claim that Mr. Lerman exerted control
over the companies or participated in their management, saying only that he was their Chief
Financial Officer (see Opp. at 1 n.3, 8), which, as previously noted, is not enough (see Mem. at
3-4).  It also states that he worked at one point with an "outside accounting firm" to correct
unspecified "records and filings" (Op. at 8), but that is a far cry from day-to-day involvement,
and, of course, is the opposite of developing misleading documents.

## II.    The Opposition Does Not Identify Adequate Allegations of Scienter or Wrongdoing Against Any of the Moving Defendants.

### A.    Lerman

The Opposition assets that "IMR alleges that: (1) In 2014, Lerman, the CFO, failed to
send current information to IMR after admitting to knowing that he sent incorrect financial
information to investors (Compl. ¶ 74-76) and benefitted personally from the insiders' conduct
(Compl. ¶ 95)."  (Opp. at 10)  An examination of the cited paragraphs of the Complaint reveals
that neither set of allegations comes anywhere close to raising an inference of scienter or of
suggesting any misconduct by Mr. Lerman.

Paragraphs 74-76 of the Complaint make the conclusory assertions that Mr. Lerman sent
Plaintiff financial statements containing "materially false and misleading information," without
explaining what information in the financial statements was purportedly false or misleading, let
alone how it was material.  Instead, the Complaint merely says that Mr. Lerman admitted to an
unnamed former investor that G2 had erred in sending that investor a tax document for an earlier
investment that had mistakenly been classified as a loan.  But the Complaint fails to explain how
a statement regarding the timing and nature of an investment made by an unnamed investor
would have any relevance to a separate investment that Plaintiff contemplated making and

ultimately made approximately three years <u>after</u> that unnamed investor's contribution.  The Complaint does not even allege that the misclassified loan was reflected on any financial statements reviewed by Plaintiff prior to its investment, let alone explain how classifying the funds provided by the unnamed investor as a loan rather than as an investment would have been "meant to bolster the face value of the G2 Companies" (Opp. at 12).  To the contrary, the most reasonable inference is the opposite, given that a loan would create a liability for the company, whereas an investment would not.

The only support the Opposition cites for its claim that Mr. Lerman "benefitted personally from the insiders' conduct" is paragraph 95 of the Complaint, but that paragraph contains no such allegation.  Rather, the text of that paragraph, in its entirety, is limited to the following unrelated assertion: "Boyazny, Morley, Lerman and Karjian are employees of MB Global Partners."  (Compl. ¶ 95)  To state the obvious, that language is silent both as to "the insiders' conduct" and as to how Mr. Lerman benefitted personally from it.

Finally, neither the Opposition nor the Complaint explains how the fact that Mr. Lerman testified to G2 FMV LLC's insolvency in 2017 (<u>see</u> Opp. at 12 (citing Compl. ¶ 145)) has any relation whatsoever to Plaintiff's allegation of fraud with respect to the investment Plaintiff made in 2014.  Nor does Plaintiff explain how another party's statement that the company was "doing fine" in 2017 (<u>see</u> Opp. at 12 (citing Compl. ¶¶ 147-48)) had any impact on Plaintiff's decision to invest in 2014.

### B.      Sams

To defend Plaintiff's inclusion of Mr. Sams in this proceeding, the Opposition goes so far as (1) to invert the Complaint's most detailed allegation involving him, and (2) to create a misleading inference from certain valuations with which Mr. Sams was not involved but for which Plaintiff nevertheless tries to hold him responsible.

Specifically, the Opposition argues that Mr. Sams "benefitted personally through misuse of investor funds" (Opp. at 10), and that he had some unspecified "involvement in the misuse of investors' funds, including loans in excess of $1.3 million to himself" (Opp. at 13).  But the Complaint makes clear that the $1.3 million loan was actually <u>from</u> Mr. Sams <u>to</u> G2 IG (<u>see</u> Compl. ¶ 122).  Given that the Complaint nowhere alleges (and could not allege) that G2 IG ever paid Mr. Sams back, the only inference is that, instead of Mr. Sams' having benefitted from investor funds, G2 IG instead benefitted from the use of Mr. Sams' funds.  Thus, far from enriching himself at G2 IG's expense, Mr. Sams actually infused into the company (on top of his initial investment) money that nearly equaled the entire amount of Plaintiff's own investment. The Opposition's mistake highlights the fundamental incongruity of this entire case: that Plaintiff seeks to recoup the amount of its own investment from defendants who have lost far more money than Plaintiff did.

The Opposition also argues that Mr. Sams "failed to check information he had a duty to monitor" (Opp. at 10), but Plaintiff does not meet the standard for pleading scienter on that narrow and rarely sustained ground.  Courts in this circuit require a plaintiff to identify specific undetected information that would have shown the falsity of the allegedly misleading statements if uncovered during a reasonable investigation.[1]  The allegations upon which the Opposition

---

[1]     <u>See</u> <u>Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.</u>, 531 F.3d 190, 196 (2d Cir. 2008) (reversing denial of motion to dismiss because plaintiffs had "not specifically identified any reports or statements that would have come to light in a reasonable investigation and that would have demonstrated the falsity of the allegedly misleading statements"); <u>In re Banco Bradesco S.A. Securities Litigation</u>, 277 F. Supp. 3d 600, 665-66 (S.D.N.Y. 2017) (dismissing securities fraud claim for failure to allege scienter adequately because, "[a]lthough Plaintiff makes a fleeting argument that [Defendant] failed to check information that he had a duty to monitor, that argument fails the particularity test because Plaintiff has not identified any specific information that could have been uncovered by [Defendant] in the course of a reasonable investigation at that time" (citation omitted)).

relies (see Opp. at 10 (citing Compl. ¶¶ 110-17)) do not meet that test for at least two reasons. First, the September 11, 2014 Management Committee valuation to which the Complaint points necessarily could not have been uncovered or checked by Mr. Sams by or before Plaintiff's July 7, 2014 investment because that valuation had not yet occurred.  Second, Plaintiff conspicuously fails to mention that the Management Committee's valuation was promptly contested by the company's former Chief Operations Officer, who believed his 20,200 units should have been valued at $8.26 million rather than $633,343, and Plaintiff likewise declines to advise that an independent appraiser then determined the units' value to be $2,060,400 – i.e., $36.39 more on a per-unit basis ($102 per unit) than the $1.5 million Plaintiff had paid for its 22,864 units ($65.61 per unit).  (See Compl. Ex. 9 at 1-2.)  Plaintiff's effort to paint such an incomplete picture should tell this Court all it needs to know about the merits of the case.

      C.     Boyazny

      The Complaint likewise fails to support the Opposition's argument that Ms. Boyazny "benefitted personally (Compl. ¶ 87-95) and failed to check information she had a duty to monitor (Compl. ¶ 45, 58)."  (Opp. at 10)  Paragraphs 87-95 of the Complaint do not even purport to allege that Ms. Boyazny "benefitted in some concrete and personal way from the purported fraud," as required to raise a strong inference of scienter.  Novak v. Kasaks, 216 F.3d 300, 307-08, 311 (2d Cir. 2000).  The most they could be said to do is suggest that her compensation from MB Credit HoldCo, LLC was to have been funded by G2 IG during some unspecified period that may or may not have coincided with Plaintiff's investment.  But receipt of compensation in exchange for work is just the sort of generalized benefit common to virtually all defendants that this circuit finds insufficient to establish scienter.  See, e.g., id. at 307 ("Plaintiffs could not proceed based on motives possessed by virtually all corporate insiders,

including . . . the desire to maintain a high stock price in order to increase executive compensation . . . ."). Meanwhile, paragraphs 45 and 58 of the Complaint not only never allege that Ms. Boyazny "failed to check information she had a duty to monitor" (Opp. at 10), they do not mention Ms. Boyazny at all.

The Opposition argues that Ms. Boyazny "jointly prepared and appears by name in numerous of the investor materials described throughout the Complaint, including those presented to Plaintiff" (Opp. at 12), but it does not specify which portions of what specific "materials" she supposedly prepared, let alone that anything she prepared was misleading (materially or otherwise). Moreover, the only support Plaintiff offers for the Opposition's vague and conclusory assertion is a citation to paragraph 45 of the Complaint, which, tellingly, makes no mention of Ms. Boyazny and instead quotes a one-sentence email from an individual whose name does not appear in the text of the Complaint and who does not seem to have any relation to Ms. Boyazny. (See Compl. ¶ 45 & n.12 & Ex. 7.) Plaintiff's other arguments regarding the allegations against Ms. Boyazny (see Opp. at 12-13) are addressed in the Memorandum (see Mem. at 4-5, 6-7), to which the Opposition offers no specific response.

## III.    The Opposition's Arguments Cannot Save the Civil Conspiracy Count.

Conceding that New York does not recognize civil conspiracy as an independent tort, Plaintiff argues that Count Ten should not be dismissed because civil conspiracy may be used to hold defendants jointly and severally liable for underlying torts. (See Opp. at 13-15.) Here, however, Plaintiff cannot state a claim (let alone establish liability) against any of the Moving Defendants for an underlying tort, as explained above and in the Memorandum. Because the civil conspiracy count cannot survive on its own, it must be dismissed for that reason alone.

It also must be dismissed because the Complaint utterly fails to allege facts showing an agreement between any Moving Defendant and anyone else to commit a tort, let alone an overt

act in support of such an agreement and intentional participation in furtherance of any plan or purpose.  The disparate categories of allegations to which the Opposition points in supposed support (see Opp. at 14-15) variously either contain no reference to any of the Moving Defendants (Compl. ¶¶ 15-16, 18, 39, 42, 44-63, 79-84, 110-21, 124-37, 140-42), allege nothing more than basic biographical background information (Compl. ¶¶ 17, 19-20), simply describe the G2 IG and G2 FMV executive and management committees (Compl. ¶¶ 38, 41), merely allege that one Moving Defendant (Mr. Sams) served – until three years prior to Plaintiff's investment – as a director of an entity that shared an address with one of G2 IG's creditors (Compl. ¶ 143), or otherwise fail to set forth any actionable misrepresentations or misconduct for the reasons explained above and in the Memorandum (Compl. ¶¶ 45, 72-76, 87-95, 122-23, 138-39). Accordingly, the  Complaint fails to state a claim for civil conspiracy.

## IV.    Plaintiff's Inadequate Service Attempts Should Not Be Excused.

The Opposition does not seriously contest Plaintiff's failure to effect proper service on Ms. Boyazny, asserting only that Plaintiff's process server delivered and mailed the summons and complaint to a location where the process server had twice been told she had not been seen in months.  (See Opp. at 16.)  Instead, the Opposition notes that Plaintiff's counsel unsuccessfully asked if Ms. Boyazny's counsel would accept service four months after the Complaint was filed (see Opp. at 16-17 & n.37), and requests additional time to effect service if the Court rules that service has not been effected (see id. at 17).  The Federal Rules of Civil Procedure make clear that the proper time to request waiver of service is prior to the time the defendant would be required to answer the complaint, that the defendant be given at least 30 days to return the waiver, and that the defendant receive at least 60 days after the request is sent to answer the complaint.  See Fed. R. Civ. P. 4(d).  Plaintiff's request for Ms. Boyazny to accept service more than a month after she moved to dismiss the complaint, just two days before

Plaintiff's opposition brief was due, and more than two months after Plaintiff had refused to agree to any meaningful extension for other defendants to serve answers to the Complaint (see Dkt. No. 19) is consistent with neither the letter nor the spirit of the waiver of service rule.

Furthermore, given the Complaint's (and Opposition's) complete absence of specific allegations of wrongdoing as to Ms. Boyazny, she should not have been named as a defendant to begin with, and Plaintiff should have taken the occasion of its then pending response deadline as an opportunity to dismiss her from the action before either side incurred any further effort or expense.  Plaintiff's unjustified refusal to do so does not warrant any special dispensation from this Court.

## <u>CONCLUSION</u>

For the reasons set forth above, in the Memorandum, and in Mr. Morley's and the Nominal Defendants' briefs, Defendants David Sams, Jonathan Lerman, and Maria Boyazny respectfully request that the Court dismiss the Complaint as to each of them.


DATED:  October 28, 2021

<div style="margin-left:40%;">

Respectfully submitted,

**MURPHY & MCGONIGLE, P.C.**

By:   <u>/s/ Eric A. Bensky</u>
Eric A. Bensky
Steven D. Feldman
1185 Avenue of the Americas, Fl. 21
New York, New York 10036
Tel. (212) 880-3999
Eric.Bensky@mmlawus.com

*Attorneys for Defendants David Sams, Jonathan Lerman, and Maria Boyazny*

</div>