UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

INTEGRATED MEDIA RESOURCES, LLC, Individually and Derivatively on Behalf of Nominal Defendant G2 FMV, LLC and also Double Derivatively on Behalf of Nominal Defendant G2 INVESTMENT GROUP, LLC.

          Plaintiffs,

v.

JONATHAN TODD MORLEY, DORI V. KARJIAN, DAVID SAMS, JONATHAN LERMAN, ANTONIO DE LA RUA, MARIA BOYAZNY,

          Defendants,

and

G2 FMV, LLC, and G2 INVESTMENT GROUP, LLC,

          Nominal Defendants.

------------------------------------------------------------X

Case No. 1:21-cv-04993-DLC

## REPLY MEMORANDUM OF LAW IN SUPPORT OF NOMINAL DEFENDANTS G2 FMV, LLC AND G2 INVESTMENT GROUP, LLC AND DEFENDANT JONATHAN TODD MORLEY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

SCHULTE ROTH & ZABEL LLP

Howard Schiffman
George H. Rowe
919 Third Avenue
New York, New York  10022
(212) 756-2000
howard.schiffman@srz.com
george.rowe@srz.com

*Attorneys for G2 FMV, LLC, G2 Investment Group, LLC, and Jonathan Todd Morley*

i

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..................................................................................................................................2

I.     PLAINTIFF FAILS TO STATE A SECTION 10(B) AND RULE 10B-5 CLAIM WHICH IS TIME-BARRED AND THE ONLY BASIS FOR SUBJECT-MATTER JURISDICTION ....................................................................................................................2

II.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE DEMAND FUTILITY FOR ITS DERIVATIVE CLAIMS .........................................................................................................4

    A.    The Complaint Fails to Create a Reasonable Doubt That a Majority of the Managers Were Disinterested in Any Challenged Transaction ...............................5

    B.    The Complaint Fails to Show That Any Managers Have a Substantial Likelihood of Personal Liability ..............................................................................6

    C.    A Reasonable Doubt That the Managers Exercised Proper Business Judgment Is No Longer Part of the Demand Futility Test and Is Irrelevant ............................8

III.   PLAINTIFF'S DIRECT CLAIMS ARE TIME-BARRED AND FAIL TO STATE A CLAIM.....................................................................................................................................8

    A.    The Direct Claims Are Time-Barred by the Statute of Limitations Even if Tolled .........................................................................................................................8

    B.    The Fraudulent Misrepresentation Claim Does Not Meet the Heightened Pleading Standard of Rule 9(b) And Fails to State a Claim ..................................10

    C.    The Civil Conspiracy Allegations Are Conclusory and Fail .................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Arco Cap. Corps. v. Deutsche Bank AG*,
   949 F. Supp. 2d 532 (S.D.N.Y. 2013)......................................................................3, 4

*Arnold v. KPMG LLP*,
   334 F. App'x 349 (2d Cir. 2009) ............................................................................2, 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................10

*Clanton v. UMG Recordings*, Inc.,
   No. 20-cv-5841 (LJL),
   2021 WL 3621784 (S.D.N.Y. Aug. 16, 2021).............................................................6

*Colbert v. Rio Tinto PLC*,
   392 F. Supp. 3d 329 (S.D.N.Y. 2019).........................................................................3

*Covington v. City of New York*,
   94 CIV. 4234 (SAS),
   1998 WL 247529 (S.D.N.Y. May 14, 1998) ............................................................10

*In re Danaher Corp. S'holder Derivative Litig.*,
   No. 1:20-cv-02445-TNM,
   ---F. Supp. 3d ---, 2021 WL 2652367 (D.D.C. June 28, 2021) .................................7

*DeAngelis v. Corzine*,
   17 F. Supp. 3d 270 (S.D.N.Y. 2014).........................................................................10

*Dohmen v. Goodman*,
   234 A.3d 1161 (Del. 2020) .........................................................................................7

*Fannin v. UMTH Land Dev., LP*,
   No. 12541-VCF,
   2020 WL 4384230 (Del. Ch. July 31, 2020)..............................................................7

*In re GoPro, Inc.*,
   No. 2018-0784-JRS,
   2020 WL 2036602 (Del. Ch. Apr. 28, 2020) .............................................................8

*Holborn Corp. v. Sawgrass Mut. Ins. Co.*,
   304 F. Supp. 3d 392 (S.D.N.Y. 2018).....................................................................6, 7

*Hooks v. Samson Lone Star, LP*,
   457 S.W.3d 52 (Tex. 2015).........................................................................................9

*Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*,
   924 F. Supp. 2d 528 (S.D.N.Y. 2013)..................................................................................3

*Kovkov v. Law Firm of Dayrel Sewell, PLLC*,
   182 A.D.3d 418 (1st Dep't 2020) ......................................................................................10

*Liana Carrier Ltd. v. Pure Biofuels Corp.*,
   No. 14-cv-3406 (VM),
   2015 WL 10793422 (S.D.N.Y. Aug. 14, 2015),
   *aff'd*, 672 F. App'x 85 (2d Cir. 2016)..................................................................................3

*Loughlin v. Goord*,
   No. 20-cv-6357 (LJL),
   2021 WL 3932616 (S.D.N.Y. Sept. 1, 2021).......................................................................7

*Sargiss v. Magarelli*,
   909 N.E.2d 573 (N.Y. 2009)................................................................................................9

*Seagrape Invs. LLC v. Tuzman*,
   No. 19-CV-9736 (RA),
   2020 WL 5751232 (S.D.N.Y. Sept. 25, 2020)..................................................................2, 4

*Shell Oil Co. v. Ross*,
   356 S.W.3d 924 (Tex. 2011)................................................................................................9

*SRM Glob. Master Fund LP v. Bear Stearns Cos.*,
   829 F.3d 173 (2d Cir. 2016)................................................................................................3

*United Food & Com. Workers Union & Participating Food Indus. Emps.*
   *Tri-State Pension Fund v. Zuckerberg*,
   No. 404, 2020,
   ----- A.3d -----, 2021 WL 4344361 (Del. Sept. 23, 2021)...............................................4, 8

*Valdez v. Hollenbeck*,
   465 S.W.3d 217 (Tex. 2015)................................................................................................9

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................................10

**PRELIMINARY STATEMENT**

In its opposition, Plaintiff[1] virtually concedes that this Court lacks federal subject-matter jurisdiction, the sole basis for which is the derivative Section 10(b) and Rule 10b-5 claim. That claim is plainly time-barred and fails to state a claim. Despite admitting the five-year statute of repose applies, Plaintiff's argument that it can nevertheless bring a timely claim close to seven years after the only alleged purchase or sale of securities is specious and contrary to law. Moreover, Plaintiff makes no attempt to contest that it cannot bring such a claim derivatively where it has failed to identify any injury to the companies on whose behalf it purports to bring the claim and relies solely on its own alleged injury in connection with its purchase of G2 FMV securities. Even if Plaintiff could overcome these fatal defects, it also fails to adequately allege the requisite scienter or that demand would have been futile and the claim should be independently dismissed on those grounds. Without a viable federal-law claim, this Court should decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss the Complaint in its entirety.

Similarly, the other derivative claims are barred by the statute of limitations. Plaintiff concedes that the shorter limitations period, including all relevant tolling provisions, applies. Under New York or Delaware law the limitations period has run.[2] In addition, the Complaint's demand futility allegations fail to allege the necessary particularized facts on a manager-by-manager and claim-by-claim basis for the derivative claims, including the Section 10(b) and 10b-5 claim. Accordingly, without the derivative claims there is no basis for federal subject-matter jurisdiction.

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint [Dkt. No. 27] ("Defendants' Opening Br.").
[2] The limitations period under Texas law has run as well but the Court need not consider that because Plaintiff concedes the shorter limitations period applies, which is plainly New York.

Plaintiff's direct claims are equally flawed.  The fraudulent misrepresentation claim is time barred under the applicable New York limitations period, which is shorter than under Texas law, and fails to adequately allege scienter.  The civil conspiracy claim is likewise time barred and based on a purely conclusory allegation of a conspiratorial agreement.  Accordingly, all claims, both direct and derivative, should be dismissed with prejudice.

## ARGUMENT

**I.     PLAINTIFF FAILS TO STATE A SECTION 10(B) AND RULE 10B-5 CLAIM WHICH IS TIME-BARRED AND THE ONLY BASIS FOR SUBJECT-MATTER JURISDICTION**

The only basis for this Court's federal subject-matter jurisdiction in this action is the derivative Section 10(b) and Rule 10b-5 claim, which is time-barred and fails to state a claim. Plaintiff alleges a single purchase or sale of securities, namely its own purchase of G2 FMV Class A Common Units on July 7, 2014.  (Compl. ¶¶ 9, 114.)  Absent a viable claim based on this purchase, the only purchase or sale of a security alleged in the Complaint, there is no basis for this Court's jurisdiction and the other state-law claims should also be dismissed.

Plaintiff concedes that a five-year statute of repose, which is not subject to equitable tolling, applies.  (Opp. at 22.)  It is well-settled that the statute of repose begins to run "on the date the parties have committed themselves to complete the purchase or sale transaction," *not* from "the time of the last alleged misrepresentation (even when made after the final purchase or sale of the securities)." *Seagrape Invs. LLC v. Tuzman*, No. 19-CV-9736 (RA), 2020 WL 5751232, at *14 (S.D.N.Y. Sept. 25, 2020) (citing *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009)).  Thus, the statute of repose expired at the latest on July 7, 2019, five years after

the only alleged purchase of securities, and that claim, which was filed on June 5, 2021, is untimely by approximately two years.[3]

In an effort to save its time-barred claim, Plaintiff unconvincingly argues that the statute of repose runs from the date of the last misrepresentation alleged instead of the date of the purchase or sale transaction. Courts in this district have explained that the statute of repose can run from alleged misrepresentations made *before* the purchase, but not that the statute of repose is delayed from running in a situation, like here, where there is a single purchase and subsequent alleged misrepresentations unconnected to that purchase.[4] The cases Plaintiff cites in an attempt to distinguish the Second Circuit's opinion in *Arnold* are inapposite.[5]

Second, Plaintiff's Section 10(b) and Rule 10b-5 claim fails because it is improperly brought derivatively on behalf of G2 FMV and G2 IG yet Plaintiff identifies no loss suffered by G2 FMV or G2 IG. To the contrary, the Complaint alleges that G2 FMV sold its securities to Plaintiff at an "inflated" price. (Compl. ¶ 191.) Critically, the only loss Plaintiff alleges is its own, which is irrelevant to a derivative claim that requires G2 FMV and G2 IG to have suffered an injury. (Compl. ¶ 195.) Plaintiff cannot base a derivative claim on an injury it alone claims to

---

[3] Plaintiff appears to have tacitly conceded that such a claim would be time-barred based on its own purchase of G2 FMV securities as it did not even attempt to bring the claim directly.

[4] As Courts in this district have explained, *Arnold* "addresses a scenario where the alleged misrepresentation was made after the purchase." *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*, 924 F. Supp. 2d 528, 536 (S.D.N.Y. 2013); *see also, e.g.*, *Arco Cap. Corps. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 544 (S.D.N.Y. 2013) (distinguishing *Arnold* from cases in which "the last alleged misrepresentation predates the purchase," in which cases "courts in this Circuit have held that the repose period runs from the date of last misrepresentation"). Thus, where "alleged misrepresentations [were] made *before* the purchase of securities . . . the alleged misrepresentations constituted 'violations' within the language of Section 1658(b)(2) and triggered the statute of repose." *Liana Carrier Ltd. v. Pure Biofuels Corp.*, 14-cv-3406 (VM), 2015 WL 10793422, at *5 (S.D.N.Y. Aug. 14, 2015), *aff'd*, 672 F. App'x 85 (2d Cir. 2016).

[5] Plaintiff's reliance on *SRM Global Master Fund LP v. Bear Stearns Cos.*, 829 F.3d 173, 177 (2d Cir. 2016) is misplaced. There the Court found there were no alleged misrepresentations within five years of filing the complaint so the claim was clearly time-barred. *Id.* at 177. The Court did not address whether the claims would be timely if the plaintiff alleged misrepresentations within five years of filing the complaint. *Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329 (S.D.N.Y. 2019), which Plaintiff cites, is not to the contrary. In *Colbert*, the Court addressed a situation where there were additional purchases alleged within five years of filing the Complaint. *Id.* at 337.

have suffered.  Plaintiff did not even respond to this argument and the claim should be dismissed on this basis alone.[6]

Accordingly, the Court should dismiss the only federal-law claim and decline to exercise supplemental jurisdiction over the remaining state-law claims.[7]

## II. PLAINTIFF FAILS TO ADEQUATELY ALLEGE DEMAND FUTILITY FOR ITS DERIVATIVE CLAIMS

All of Plaintiff's derivative claims fail to adequately allege demand futility as the Complaint fails to allege particularized facts suggesting that a majority of the managers were interested in any of the alleged transactions and actions on the requisite manager-by-manager and claim-by-claim basis.[8]  Plaintiff's arguments in opposition fare no better as they likewise group various challenged transactions together in a transparent attempt to obfuscate the fact that no more than a single manager is alleged to be interested or not independent with respect to any given transaction.  Accordingly, the derivative claims should be dismissed, which would divest this Court of federal subject-matter jurisdiction.

---

[6] Plaintiff's claim also fails for a lack of the necessary elements of reliance, economic loss, and loss causation as a result of alleged misrepresentations made after its purchase of G2 FMV securities.  *See Seagrape Invs. LLC*, 2020 WL 5751232, at *15.  None of which are adequately alleged where Plaintiff could not have relied on any misrepresentations after its purchase or suffered any loss as a result. (Defendants' Opening Br. at 9.)  Plaintiff's passing argument that it sufficiently alleged scienter based on an alleged "motive and opportunity to commit fraud" by alleging the managers "benefitted in some concrete and personal way from the purported fraud" merely restates the standard in a conclusory manner for which there are no well-pled allegations.  (Opp. at 22–23.)

[7] *See, e.g.*, *Arco Cap. Corps. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 546 (S.D.N.Y. 2013) (declining to exercise supplemental jurisdiction after dismissing Section 10(b) claim and explaining that where federal claims are dismissed in the early stages of litigation, "courts should generally decline to exercise pendent jurisdiction over remaining state law claims").

[8] Following the filing of this motion to dismiss, but before Plaintiff filed its opposition, the Delaware Supreme Court restated the test for evaluating allegations of demand futility, while holding that "cases properly construing Aronson, Rales, and their progeny remain good law."  *United Food & Com. Workers Union & Participating Food Indus. Empls. Tri-State Pension Fund v. Zuckerberg*, No. 404, 2020, --- A.2d ---, 2021 WL 4344361, at *17 (Del. Sept. 23, 2021).  Under the new formulation, "courts should ask the following three questions . . . (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand; (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand."  *Id.*

### A. The Complaint Fails to Create a Reasonable Doubt That a Majority of the Managers Were Disinterested in Any Challenged Transaction

As an initial matter, Plaintiff incorrectly treats Karjian as a "director," when the Complaint alleges that Karjian was merely the "Secretary of both the Management Committee of G2 FMV and Executive Committee of G2 IG," and not a manager of either entity. (Compl. ¶ 18.) Thus, any alleged interest Karjian had in the challenged transactions is irrelevant.

First, Plaintiff argues that because G2 IG was allegedly paying MB Global Partners' operational expenses, Morley and Karjian were interested in approving "G2 IG's partnership with MB Global Partners" as alleged employees of MB Global Partners. (Opp. at 19.) The Complaint does not allege particularized facts indicating Morley or Karjian received any compensation as employees of MB Global Partners. Even if it did, Karjian was not a manager of G2 IG, so Plaintiff has at best identified only a single manager that could conceivably be interested in that transaction.

Second, Plaintiff argues that Morley and Sams were interested in G2 IG's sale of Stratford Securities LLC to Y2X in 2018 based on the allegation that Sams "previously served as director of Guggenheim Capital, an affiliate of Guggenheim Partners." (Opp. at 20.) However, there are no particularized allegations that Sams, who is only alleged to have "served as a Director of Guggenheim Capital, LLC . . . until August 2011" (Compl. ¶ 143), had any interest in Guggenheim Capital, LLC years later. Thus, Plaintiff's attempt to create a reasonable doubt about Sams' disinterestedness based on Sams' speculative and admittedly past connection to an affiliate of Guggenheim Partners is wholly unsupported by particularized factual allegations.

Third, Plaintiff argues that a capitalization table for G2 FMV purportedly shows an increase in the number of shares owned by Sams and Luna Imperial S.A., an entity allegedly founded by de la Rua, without any additional investment from either. (Opp. at 20.) Plaintiff

5

improperly treats these as a single transaction for demand futility purposes. Nor does the Complaint allege any particularized facts about these alleged increases except that they were reflected on a capitalization table.[9] (Compl. ¶¶ 137, 139.) Even if there were, at most only one manager would be interested in each transaction.

Fourth, Plaintiff combines several transactions in arguing that G2 IG received several loans from "entities the G2s' directors controlled on terms that were advantageous to their entities and grossly unfavorable to the G2s." (Opp. at 21.) That assertion is wholly conclusory because the Complaint does not allege any facts about the financial terms of any of the loans or even that they were repaid. Moreover, even as alleged, each loan relates to only a single manager.

In sum, Plaintiff's demand futility arguments fail because only a single manager, constituting a minority of the three managers, is even allegedly interested in any of the challenged transactions.

### B.  The Complaint Fails to Show That Any Managers Have a Substantial Likelihood of Personal Liability

Plaintiff's argument that it has established that the managers have a substantial likelihood of liability on the derivative claims is meritless. Not only does Plaintiff incorrectly rely on New York law, its other arguments are entirely based on conclusory allegations.

Plaintiff completely ignores the standard under Delaware law for its breach of fiduciary duty and aiding and abetting claims alleging a *Caremark* claim, instead arguing that New York law applies under New York choice-of-law rules. Plaintiff's reliance on *Holborn Corp. v.*

---

[9] Plaintiff's attempt to raise new allegations concerning the lack of additional investment for these purported share increases in its opposition to a motion to dismiss is improper and the Court should not take notice of these new allegations. *See Clanton v. UMG Recordings*, Inc., 20-CV-5841 (LJL), 2021 WL 3621784, at *2 (S.D.N.Y. Aug. 16, 2021) ("Because a plaintiff cannot raise allegations not raised in its complaint in a brief in opposition to a motion to dismiss, the Court does not take notice of these allegations.").

*Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392 (S.D.N.Y. 2018) is badly misplaced. *Holborn* involved a breach of fiduciary duty claim by an insurance company against a third-party reinsurance intermediary, not a derivative breach of fiduciary duty claim asserted on behalf of an entity. *Id.* at 395–96. Pursuant to the internal affairs doctrine, Delaware law applies to Plaintiff's derivative breach of fiduciary duty and aiding and abetting claim, as G2 FMV and G2 IG are Delaware limited liability companies. *See Loughlin v. Goord*, 20-cv-6357 (LJL), 2021 WL 3932616, at *8 n.6 (S.D.N.Y. Sept. 1, 2021) ("New York applies the internal affairs doctrine to claims for breach of fiduciary duty and, thus, applies the law of the state of incorporation to such claims."). Thus, all of Plaintiff's arguments based on New York law are irrelevant and it has no response to its failure to satisfy the *Caremark* standard.[10]

Plaintiff concedes that its derivative waste claim requires a showing of corporate assets for "disproportionately small consideration" but attempts to salvage it by arguing the Complaint alleges the managers "received G2 FMV shares for no consideration." (Opp. at 18.) In reality, the Complaint alleges no particularized facts showing what the consideration received for these shares was other than that they were reflected on a capitalization table.

Lastly, as Defendants demonstrated, demand is not excused for a derivative unjust enrichment claim that is "premised" on a non-viable breach of fiduciary duty claim, as is the case here. (Defendants' Opening Br. at 14.) Plaintiff has no response to this other than to argue its

---

[10] Plaintiff's reliance on *Fannin v. UMTH Land Development, LP*, No. 12541-VCF, 2020 WL 4384230, at *21 (Del. Ch. July 31, 2020) in arguing that "communications concerning investment decisions is a request for stockholder action" that creates a duty for directors to affirmatively disclose facts is inapposite because the Complaint does not allege any such communications like the tender offer at issue in that case. While "deliberately misinform[ing] shareholders about the business of the corporation" can give rise to a breach of fiduciary duty claim under Delaware law, to state a claim in this context scienter must be adequately alleged, which Plaintiff has failed to do. *In re Danaher Corp. S'holder Derivative Litig.*, No. 1:20-cv-02445-TNM, --- F. Supp. 3d ---, 2021 WL 2652367, at *6 (D.D.C. June 28, 2021); *Dohmen v. Goodman*, 234 A.3d 1161, 1169 (Del. 2020).

unjust enrichment claim is not time-barred and without any explanation that it is "adequately pleaded." (Opp. at 23.)

### C. A Reasonable Doubt That the Managers Exercised Proper Business Judgment Is No Longer Part of the Demand Futility Test and Is Irrelevant

Plaintiff's alternative argument that the Complaint raises a reasonable doubt that the managers exercised proper business judgment in allegedly approving the transactions is no longer relevant in light of the Delaware Supreme Court's recent refining of the demand futility test. As the court explained, the refined test "refocuses the inquiry on the decision regarding the litigation demand, rather than the decision being challenged." *Zuckerberg*, 2021 WL 4344361, at *16. Thus, Plaintiff cannot establish demand futility based on whether the transactions themselves constituted an exercise of proper business judgment.[11]

## III. PLAINTIFF'S DIRECT CLAIMS ARE TIME-BARRED AND FAIL TO STATE A CLAIM

Plaintiff's direct claims are clearly time-barred on the face of the Complaint under New York law and are not saved by any tolling doctrines because Plaintiff was on inquiry notice more than four years before they filed this lawsuit. In any event, Plaintiff's direct claims are based on conclusory allegations and fail to state a claim.

### A. The Direct Claims Are Time-Barred by the Statute of Limitations Even if Tolled

As Plaintiff concedes, "the court applies the limitations period, *including all relevant tolling provisions*, of either New York or the state of injury, whichever is shorter." (Opp. at 6 (emphasis added).) Here, applying the relevant tolling provisions, New York's limitations

---

[11] In any event, Plaintiff complains about a series of alleged transactions and makes a blanket conclusory allegation that there was "no consideration to the G2 Companies" for any of them. (Compl. ¶¶ 169, 172.) This fails to satisfy the pleading standard for demand futility. *In re GoPro, Inc.*, No. 2018-0784-JRS, 2020 WL 2036602, at *8 (Del. Ch. Apr. 28, 2020) (explaining that in assessing demand futility allegations, the court "need not credit 'conclusory allegations' or 'inferences that are not objectively reasonable.'").

8

period is shorter than and clearly has already run.[12] Plaintiff's alleged damages on its direct claims only relate to its own purchase of G2 FMV securities on July 7, 2014, almost seven years before filing the Complaint on June 5, 2021. (Compl. ¶¶ 249–50.) Plaintiff incorrectly concludes the Texas limitations period applies to its fraudulent misrepresentation claim but the proper comparison is between the tolling doctrines because the six-year period under New York law has clearly run. New York permits fraud-based claims to be brought only two years from when the fraud could have been discovered with reasonable diligence, while Texas allows four years. Thus, because of the shorter tolling provision the New York limitations period is plainly shorter and applies.

Although Plaintiff likely was on inquiry notice earlier, at the latest, on the face of the Complaint, Plaintiff using "reasonable diligence" could have discovered enough of the purported facts underlying its claims from publicly-available documents on May 18, 2017 when the lawsuit *Patrick J. Thomas v. G2 FMV, LLC et al* was filed against G2 FMV and on which the Complaint relies in significant part.[13] Nevertheless, Plaintiff did not file this lawsuit until more than four years later, after the two-year period under New York law and even the four-year period under Texas law.[14]

---

[12] Under New York law, "a fraud-based action must be commenced within six years of the fraud or within two years from the time the plaintiff discovered the fraud or '*could with reasonable diligence have discovered it.*'" *Sargiss v. Magarelli*, 909 N.E.2d 573, 576 (N.Y. 2009) (citation omitted) (emphasis added). Under Texas law, for the four-year limitations period for fraud-based claims, "fraud prevents the running of the statute of limitations until it is discovered, *or by the exercise of reasonable diligence might have been discovered.*" *Hooks v. Samson Lone Star, LP*, 457 S.W.3d 52, 57 (Tex. 2015) (citations omitted) (emphasis added). There are two doctrines under Texas law that may delay accrual or toll limitations: "(1) the discovery rule and (2) fraudulent concealment." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). "When applicable, the discovery rule 'defers the accrual of the cause of action until the injury was *or could have been reasonably discovered.*'" *Id.* (citation omitted) (emphasis added). The fraudulent concealment doctrine only applies where the one concealing the fraud "actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong," requiring an affirmative act of concealment. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011). Here, there are no well-plead allegations in the Complaint that Morley knew a wrong occurred, much less took any action to conceal anything from Plaintiff.
[13] Moreover, Plaintiff sent an email on May 9, 2019, more than two years before filing the Complaint, asserting "we believe there have been numerous contract violations and causes for legal action." (Compl. Ex. 29.)
[14] The civil conspiracy claim is also time barred because at most a four-year limitations period applies. (Opp. at 9.)

### B. The Fraudulent Misrepresentation Claim Does Not Meet the Heightened Pleading Standard of Rule 9(b) And Fails to State a Claim

Plaintiff's attempt to rely on the group pleading doctrine to attribute to Morley alleged statements Plaintiff admits he did not make is flawed because the group pleading doctrine does not excuse Plaintiff from adequately alleging scienter on behalf of Morley, which Plaintiff has not done. *See DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014) (explaining under group pleading doctrine plaintiff "improperly attempts to group-plead the scienter requirement."). Plaintiff responds with more conclusory allegations that Morley "benefited from the fraud and knew that his statements were false" based on the Complaint's equally conclusory allegation that "Morley pillaged the G2s for his own personal benefit." (Opp. at 12.) There are no non-conclusory allegations indicating Morley specifically knew that any of the alleged misrepresentations were false.

### C. The Civil Conspiracy Allegations Are Conclusory and Fail

The Complaint's boilerplate allegation that "[o]n information and belief, Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to defraud Plaintiff" (Compl. ¶ 252) is wholly conclusory and insufficient even under New York law.[15] *See, e.g.*, *Kovkov v. Law Firm of Dayrel Sewell, PLLC*, 182 A.D.3d 418, 419 (1st Dep't 2020) (affirming dismissal of civil conspiracy claim because "[b]are, conclusory allegations of conspiracy are insufficient"). Plaintiff has not alleged any facts regarding how or when this supposed agreement between the defendants was purportedly reached.

---

[15] The single civil conspiracy case Plaintiff cites is not to the contrary. There, the "allegations of conspiracy [were] coupled with allegations of specific acts" including the specific meeting between the alleged conspirators where the agreement was allegedly reached. *Covington v. City of New York*, 94 CIV. 4234 (SAS), 1998 WL 247529, at *2 (S.D.N.Y. May 14, 1998); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Dated: New York, New York  　　　　　SCHULTE ROTH & ZABEL LLP
　　　　October 28, 2021

　　　　　　　　　　　　　　　　　　By:  /s/  Howard Schiffman
　　　　　　　　　　　　　　　　　　　　Howard Schiffman
　　　　　　　　　　　　　　　　　　　　George H. Rowe
　　　　　　　　　　　　　　　　　　　　919 Third Avenue
　　　　　　　　　　　　　　　　　　　　New York, New York  10022
　　　　　　　　　　　　　　　　　　　　(212) 756-2000
　　　　　　　　　　　　　　　　　　　　howard.schiffman@srz.com
　　　　　　　　　　　　　　　　　　　　george.rowe@srz.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for G2 FMV, LLC, G2 Investment Group, LLC, and Jonathan Todd Morley*