UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
INTEGRATED MEDIA RESOURCES, LLC,        :
                                        :
                         Plaintiff,     :         21cv4993(DLC)
              -v-                       :
                                        :         OPINION AND ORDER
JONATHAN TODD MORLEY, et al.,           :
                                        :
                         Defendants.    :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiff Integrated Media Resources, LLC:
William Andrew Brewer, III
Brewer, Attorneys & Counselors
1717 Main Street
Suite 5900
Dallas, TX 75201

For defendants Jonathan Todd Morley, G2 FMV, LLC and
G2 Investment Group, LLC:
George Hong Liu Rowe
Howard Schiffman
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

For defendants David Sams, Jonathan Lerman and Maria Boyazny:
Eric A. Bensky
Steven David Feldman
Murphy & McGonigle P.C.
1185 Avenue of the Americas
21st Floor
New York, NY 10036

For defendant Dori V. Karjian:
Pro Se

DENISE COTE, District Judge:

Integrated Media Resources, LLC ("IMR"), made a $1.5 million investment in 2014 in G2 FMV, a financial services firm. IMR contends that the defendants caused investors to purchase shares of G2 FMV common stock at an artificially high price. IMR, a shareholder of G2 FMV, asserts a single federal claim for securities fraud and various state law claims.

The defendants have moved to dismiss.  For the following reasons, the defendants' motion to dismiss the § 10(b) and Rule 10b-5 claim as time-barred is granted.  The Court declines to exercise supplemental jurisdiction over the remaining claims.

## Background

The following facts are drawn from the complaint and documents upon which it relies.  For the purposes of deciding this motion, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in plaintiff's favor.

G2 Investment Group, LLC ("G2 IG"), a Delaware Limited Liability Company, was founded in 2008.  Jonathan Todd Morley, Chief Executive Officer, and Antonio de la Rua were two of G2 IG's founding members.  Morley, de la Rua, and David Sams, Vice Chairman of G2 IG, were members of the Executive Committee, which managed and controlled the business affairs of G2 IG.  G2

FMV, a Delaware Limited Liability Company established in 2009, held and managed the interests in G2 IG.

In January 2014, Barrett Wissman, an employee and agent of IMR, was introduced to Morley.  Between January and March 2014, Morley and Wissman discussed potential joint ventures and business opportunities, including a plan to develop a G2 Media platform focused on the media and entertainment sector.

On March 31, 2014, Wissman proposed to Morley that he was "willing to make an investment" in G2 IG.  Between March and May 2014, Wissmam received marketing materials, financial statements, and investment presentations from G2.

On May 13, 2014, Wissman received a subscription packet for the purchase of 22,864 G2 FMV Class A Common Units for $1.5 million.  Two days later, Wissman received an urgent email from a G2 employee regarding the need to "close and fund this week." Wissman forwarded the email to Morley and asked whether there were "some major cash flow problem."  Morley responded "No, we just crushed it here and I want this done."

In April 2014, however, defendants were negotiating a resolution with the IRS to pay off outstanding tax liabilities. At the time, the total IRS exposure to G2 was close to $3 million including penalties.  The financial statements that Wissman received during this time in 2014 did not include information regarding the outstanding tax liabilities.  G2 also

failed to inform Wissman in April 2014 of an accounting error that treated a 2011 investment of $1,000,000 as a loan.

On July 6, 2014, in reliance on the investment materials that he had received from G2 FMV, Wissman executed the Subscription Agreement, G2 FMV's Operating Agreement, and the Joinder Agreement to G2 FMV's Operating Agreement.  IMR wired $1.5 million to complete the purchase of 22,864 G2 FMV Class A Common Units.

In October and November 2016, G2 IG entered into two loans totaling $4 million with an investment company.  As of October 2016, G2 IG owed $18.5 million in outstanding loans to several entities controlled by Morley, de la Rua, and Sams.  Throughout this time, IMR remained unaware of the financial status of the G2 companies and believed that G2 IG's assets were performing well through 2018.

From February through March 2019, plaintiff repeatedly requested the financial statements for G2 IG for the years ending in 2017 and 2018 to no avail.  Finally, on May 9, 2019, plaintiff sent an email to Dori Karijian stating that it had lost confidence in the company and its leadership and offering Morley 30 days to buy it out at the original investment amount of $1.5 million.

As of January 1, 2020, G2 IG was no longer an active company and did not have any employees, offices, or consultants

under contract.  On June 1, 2020, the charters for both G2 IG
and G2 FMV were cancelled by the Delaware Secretary of State.

IMF filed this action on June 5, 2021.  Morley and the G2
Companies moved to dismiss on August 30, and defendants Sams,
Lerman and Boyazny filed a separate motion to dismiss on the
same date.  On August 31, defendant Karjian was deemed to have
joined in his co-defendants' motions to dismiss.  The motions
became fully submitted on October 28.

## Discussion

The complaint alleges ten causes of action: (1) that the
individual defendants violated § 10(b) of the Securities
Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17
C.F.R. § 240.10b-5; (2) breach of fiduciary duty; (3) waste; (4)
unjust enrichment; (5) aiding and abetting breaches of fiduciary
duties; (6) declaratory and injunctive relief; (7) equitable
constructive trust; (8) equitable accounting; (9) fraudulent
misrepresentation against Morley and Kajian; and (10) civil
conspiracy against Morley, Karjian, Sams, de la Rua, Jonathan
Lerman and Maria Boyazny.

When deciding a motion to dismiss under Rule 12(b)(6), Fed.
R. Civ. P., a court must "accept all factual allegations as
true" and "draw all reasonable inferences in favor of the
plaintiffs."  Melendez v. City of New York, 16 F.4th 992, 1010
(2d Cir. 2021) (citation omitted).  A claim is sufficiently

5

plausible to withstand a motion to dismiss when the "factual
content" of the complaint "allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged."  Cavello Bay Reinsurance Ltd. v. Shubin
Stein, 986 F.3d 161, 165 (2d Cir. 2021) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009)).  A complaint must do more,
however, than offer "naked assertions devoid of further factual
enhancement."  Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d
Cir. 2020).  "[T]hreadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice."  Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 189
(2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 663
(2009)).

I.  Federal Securities Fraud

The defendants argue that the plaintiff's federal
securities fraud claim is time barred by the Exchange Act's
statute of repose, and that the complaint in any event fails to
state a claim.  The plaintiff's sole federal claim is dismissed
as untimely.  Plaintiff has failed to allege any fraudulent
statements or acts in violation of the Exchange Act occurring
within the five years prior to the date this action was filed.

A.  Section 10(b) and SEC Rule 10b-5

SEC Rule 10b-5 renders it unlawful to "make any untrue
statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5; see also 15 U.S.C. § 78j(b).  To avoid dismissal under Rule 10b-5, a complaint must plausibly allege that the defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury."  Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co., 19 F.4th 145, 149-50 (2d Cir. 2021) (citation omitted).  A complaint alleging securities fraud must satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3), and Fed. R. Civ. P. 9(b) by stating "with particularity the circumstances constituting fraud."  Id. at 150 (citation omitted).

Rule 10b-5 does not apply to frauds that are not made "in connection with the purchase or sale of securities."  Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006).  This requirement is broad, and "it is enough that the fraud alleged coincide with a securities transaction."  Id. (citation omitted).  The Exchange Act, however, "must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b)."  SEC

v. Zandford, 535 U.S. 813, 820 (2002).  "Typically, a plaintiff satisfies the 'in connection with' requirement when the fraud alleged is that the plaintiff bought or sold a security in reliance on misrepresentations as to its value."  Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 96 (2d Cir. 2018) (citation omitted).  "A claim fails where the plaintiff does not allege that [a defendant] misled him concerning the value of the securities he sold or the consideration he received in return."  Id. (citation omitted).  In addition, a "fraudulent misrepresentation or omission is not made in connection with such a purchase or sale of a covered security unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a covered security."  Chadbourne & Parke LLP v. Troice, 571 U.S. 377, 387 (2014).

B.   Statutory Time Bar

A district court may consider timeliness on a motion to dismiss "[w]here the dates in a complaint show that an action is barred by a statute of limitations."  Cangemi v. United States, 13 F.4th 115, 134 (2d Cir. 2021) (citation omitted).

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws may be brought not later than the earlier of (1) 2 years after the discovery of facts constituting the violation; or (2) 5 years after such violation.

28 U.S.C. § 1658(b) (emphasis added); see also Steginsky v. Xcelera Inc., 741 F.3d 365, 369 (2d Cir. 2014).  Courts often refer to the former period as a "statute of limitations" and the latter period as a "statute of repose."  See SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C., 829 F.3d 173, 176 (2d Cir. 2016) ("SRM"); P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 104 (2d Cir. 2004).

Statutes of repose "are subject only to legislatively created exceptions," SRM, 829 F.3d at 176 (citation omitted), and "may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control."  CTS Corp. v. Waldburger, 573 U.S. 1, 9 (2014).  "A statute of repose begins to run without interruption once the necessary triggering event has occurred, even if . . . the plaintiff has not yet, or could not yet have, discovered that she has a cause of action."  Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 107 (2d Cir. 2013) (citation omitted).

C.   Application of the Statute of Repose

This action was filed on June 5, 2021.  Thus, in accordance with § 1658(b), the plaintiff may only bring suit for an alleged violation of the Exchange Act that occurred on or after June 5, 2016.  Here, the only fraudulent statements or omissions alleged in the complaint that were also connected to the purchase of a security were statements and omissions that occurred before July

9

6, 2014.  That is the date on which IMR purchased 22,864 G2 FMV
Class A Common Units.

This action was not commenced for another seven years or
nearly two years after the date on which the five-year statute
of repose had run.  Because the complaint has failed to allege a
misrepresentation or material omission by the individual
defendants in connection with the purchase or sale of securities
that accrued within five years of the filing of this action,
plaintiff's federal securities fraud claim is time-barred.

Plaintiff concedes that a five-year statute of repose
applies but asserts that the date of the last misrepresentation
-- and not the transaction -- triggers the statute of repose.
In turn, plaintiff alleges that the individual defendants made
material misrepresentations about the extent and value of G2's
assets well into 2019.  Thus, it contends, the five-year statute
of repose began to run in 2019 and the federal claim is timely.

Plaintiff cites SRM in support of its argument that the
date of the last misrepresentation triggers the statute of
repose.  In SRM however, the Second Circuit found that the
federal claims were time-barred because there were no
misrepresentations alleged within five years of the filing of
the complaint, not that the federal claims would have been
timely had there been misrepresentations alleged in the five
years prior to the filing of the complaint.  SRM, 829 F.3d at

177.  Misrepresentations about G2's assets and value after the purchase of the securities in 2014 do not operate to extend the statute of repose.  The only purchase of a security by plaintiff occurred in 2014.  Any misrepresentations regarding G2's financial condition in 2019 do not alter the determination that the cause of action under the Exchange Act accrued in 2014.

Plaintiff has therefore failed to allege a fraudulent statement, omission, or act by any of the defendants that could constitute a violation of § 10(b) and Rule 10b-5 within the five year period prior to the filing of this action.  IMF's securities fraud claim under § 10(b) of the Exchange Act is accordingly time-barred.

II.  Supplemental Jurisdiction over State Law Claims

Plaintiff also brings a number of direct and derivative state law claims.  A district court may decline to exercise supplemental jurisdiction over a state law claim if the district court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Once a court has dismissed all federal claims, it must decide whether the traditional values of "economy, convenience, fairness, and comity" counsel against the exercise of supplemental

jurisdiction.  <u>Catzin v. Thank You & Good Luck Corp.</u>, 899 F.3d

77, 85 (2d Cir. 2018) (citation omitted).

> In weighing these factors, the district court is aided
> by the Supreme Court's additional guidance in
> [<u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343
> (1988),] that in the usual case in which all federal-
> law claims are eliminated before trial, the balance of
> factors will point toward declining to exercise
> jurisdiction over the remaining state-law claims.

<u>Kolari v. New York-Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d

Cir. 2006).

There is no reason in this case to depart from the ordinary

practice of dismissing the remaining state law claims.  The sole

federal claim has been resolved and discovery has yet to begin

in this action.  Judicial economy and comity weigh in favor of

the dismissal.  The plaintiff makes no developed argument in

support of supplemental jurisdiction.  Accordingly, the Court

will not exercise supplemental jurisdiction over the state law

claims.

### Conclusion

The August 30, 2021, motion to dismiss is granted.  The §
10(b) and Rule 10b-5 claim is dismissed with prejudice.  The
Court declines to exercise supplemental jurisdiction over the
state law claims and they are dismissed without prejudice to
refiling in state court.  The Clerk of Court shall close the
case.

Dated:      New York, New York
            March 29, 2022


_____
            DENISE COTE
    United States District Judge